The opinion of the court was delivered by
Horton, C. J.:
It appears from the record in this case, that on April 24, 1857, Samuel P. Woods, the grantor of plaintiff, settled and filed his preemption claim on a tract of land in section 14, range 25, township 11, in Wyandotte county, containing about eighty acres, and being a part of the lands in controversy; that on July 13, 1857, the United States conveyed by patent to Silas Armstrong this land, together with certain other lands, all known as “ Wyandotte Reserve No. 1,” lying north of the Shawnee reserve, between the Kaw and the Missouri rivers and the line between the states of Kansas and Missouri. At the date of this patent there were several other settlers upon the lands described in the patent besides Samuel P. Woods, and among the setr 'tiers were David E. James and George B. Wood. Some litigation had arisen, or was about to arise, between the settlers claiming under the preemption laws of the United States and the patentee, Silas Armstrong. Therefore, on July 8, 1858, Samuel P. Woods, George B. Wood and five other settlers employed David E. James as their attorney to defend their interests in the land, and united in giving to said David E. James a written power of authority authorizing him to litigate, defend, settle or compromise the questions of title between said settlers and all other parties; and under such power of attorney said Samuel P. Woods, and each of the other settlers, authorized said David E. James to litigate, settle or compromise their respective rights to'said lands with Armstrong. Afterward, on September 11, 1858, Samuel P. Woods and wife, by their quitclaim deed of that date, conveyed to Luther H. Wood all their rights, title, interest and estate to the lands in said Wyandotte reserve settled and filed upon by *203 said Samuel P. Woods. In taking such conveyance, Luther H. Wood acted for George B. Wood and David E. James, the said James then being the attorney of Samuel P. Woods concerning the land described in the conveyance, and then in dispute between Samuel P. Woods and Silas Armstrong. On December 20,1858, Luther H. Wood indorsed upon said deed the following words:
“For value received, I do hereby assign, transfer and set over to David E. James all my right, title and interest to the within deed of quitclaim.— Luther H. Wood,”
And delivered the same to David E. James. In consideration of th'e said conveyance to Luther H. Wood, Samuel P. Woods received from Luther H. Wood two notes, made by the latter in favor of the former, for '$500 each; and for the crop upon the land, a wagon. After this conveyance, Samuel P. Woods-delivered over possession of the premises and crop to Luther H. Wood, abandoned the lands, left Wyandotte county and moved to Miami county, where he has lived since, and where he was living at the trial of the action in the court below. The notes that Samuel P. Woods received for the conveyance he transferred to one J. J. Park, for stock. Park afterward brought an action against Luther H. Wood to recover upon these notes. Wood pleaded a failure of consideration — that Samuel P. Woods had no title to the land for which the notes were given; and that Woods had failed to make a subsequent deed to such land, according to promise at the execution of the notes. It is difficult to tell what was the result of the action upon the notes; but Luther H. Wood testified that he never paid them.
Upon July 18, 1859, David E. James made a compromise with Silas Armstrong as to the Wyandotte reserve No. 1, which embraced the lands filed upon by Samuel P. Woods. The contract was in writing, and in it said James agreed, in behalf of himself and the parties who signed the said power of attorney, to surrender to said Armstrong the possession of the lands claimed by such parties, and to release and quitclaim to him all of his and their right, title and interest thereto. *204 Silas Armstrong, on his part, thereon agreed to convey to said James an undivided three-eighths of all the land to which Samuel P. Woods and the other parties who signed the power of attorney had prior thereto made claim, and lying north of what was called the old bed of Turkey creek. This compromise and settlement transferred to David E. James about ninety acres of land in all, for which he agreed to pay Armstrong $50 per acre, said purchase-money to be paid to Armstrong in the manner as follows: Forty per centum of all the money or moneys as fast as realized and received in hand by the party of the second part, on the sale or sales of the land or any part thereof, according to the manner and condition of said sales, . . . until he received the price of said land at $50 per acre. It was further agreed that Armstrong should receive $500 in cash within ten days from said date, and the remainder of the compromise price should be evidenced by a bond secured by a mortgage upon the land. On the same day David E. James, in behalf of himself, said Samuel P. Woods and all the other parties named in the compromise agreement, made a quitclaim deed to Armstrong, as provided therein, and Armstrong and wife conveyed to James alone, in consideration of the sum of $4,500, an undivided three-eighths interest in the land lying north of said Turkey creek, and included in his patent, upon which land James gave in return a mortgage thereon to secure the payment of that sum upon the terms and conditions provided in the compromise agreement. The mortgage was executed by James-alone. Under this compromise agreement, if Samuel P. Woods had not conveyed his interest in the lands in dispute, he would have been entitled to an amount of land equal in acreage to three-eighths of his original claim, subject, however, to the incumbrance of $50 per acre, to be paid out of the proceeds of the first sales of said lands. After the conveyance to Luther H. Wood by Samuel P. Woods, Luther H. occupied this land for some months, then surrendered his possession to his brother, George B. Wood, and after the compromise was effected with Silas Armstrong, David E. James *205 and the defendants claiming through and under him have always been in possession thereof; James and those claiming under him have paid the taxes, amounting' to many thousand dollars, and made valuable improvements upon the property to an amount probably exceeding $40,000. It further appears that David E. James had paid to Silas Armstrong the $4,500 stipulated by him in the mortgage given under the terms of the compromise. On January 29, 1874, Samuel P. Woods and wife conveyed to plaintiff the lands described in the petition, the consideration expressed being $5,000.
Counsel for plaintiff contends upon these facts, that his client is entitled to the equitable relief demanded in her petition, and such claim is based upon the propositions that David E. James became the attorney and confidential adviser of Samuel P. Woods; that while the relation of attorney and client existed between them, James could neither directly nor indirectly purchase of his client the subject-matter of such attorneyship to his private gain; that therefore the conveyance of September 11, 1858, from Samuel P. Woods and wife to Luther H. Wood, then actitag for James and another party, was fraudulent and void, if said James intended to purchase through Luther H. Wood of his client an interest in the subject-matter of his attorneyship for his own benefit. On the other hand, if James was acting in good faith to his client, Samuel P. Woods, in respect to the subject-matter arising out of the relation of attorney and client, the law presumes that in taking the transfer from Luther H. Wood, he was acting to protect the interest of his client, Samuel P. Woods, and therefore purchased -such interest for his client and not for his own private gain; that James obtained the compromise with Armstrong for the benefit of Samuel P. Woods, and not for himself, and therefore up to the time of his death held the legal title of the premises in controversy, as trustee for Samuel P. Woods; that plaintiff, by the conveyance to her of January 29, 1874, succeeded to the title, interest and estate of Samuel P. Woods, and therefore was *206 in equity the owner of the lands sued for. In brief, the argument of counsel is:
First, That if James purchased of his client through Luther H. Wood the land in controversy, then his purchase was void, because such act was a manifest violation of good faith, and such a fraud upon his client that the transaction cannot be upheld.
Second, That as the law- does not presume a party guilty of fraud, or that an attorney would take advantage of his relationship with his client to advance his own interest, it must be presumed that James in all his transactions with Luther H. Wood and Silas Armstrong, after the date of the execution of the power of attorney of July 8, 1858, was acting solely as the attorney and agent of Samuel P. Woods, and acquired title to himself as trustee for Woods. Counsel says that this latter position is further strengthened by the fact that at the date of the compromise of July 18, 1859, the instrument drawn by himself recites that he was then acting as the attorney and agent of Woods, and that Woods then claimed an interest in the land. Counsel in this connection also calls attention to the fact that the notes executed by. Luther H. Wood for the conveyance from Samuel P. Woods were never paid, and claims that such conveyance was therefore without any consideration.
„ ... . client. *207 2 Attorney ¿aent;0pVu°chase ien ‘ *208 3. Purchase from cueat, n-iieu *206 We fully concur with counsel, that the relation of attorney and client was fully established at the trial as existing between David E. James and Samuel P. Woods, at the date of the conveyance from Woods'to Luther H. Wood, and at the date of the transfer from Luther H. Wood to James; and we also agree with counsel, that the law will not permit an attorney to take advantage of his relations with bis client to make a contract with reference to property in litigation, to his client’s disadvantage or prejudice. The policy of the law is clearly opposed to contracts between client and attorney in relation to property in litigation, and especially in relation to property concerning which *207 there is a dispute as to title. The value of real estate depends almost exclusively on the certainty of the title, and from the nature of his profession, the attorney as a rule is more competent to judge of it than the client. To discharge the duties which that relation imposes, the client must commit to his attorney all the information he possesses on the subject. That relationship, too, begets the most unlimited confidence, and to permit the attorney to use those means to the prejudice of his client, would be to subject him to what is aptly termed “a crushing influence.” (Miles v. Irving, 1 McCord’s Ch. 524.) It is the duty of the attorney to protect the interests of his client, and the client is entitled, while the relation exists, to the full benefit of the best exertions of his attorney; therefore an attorney may not bring his own personal interest in any way into conflict with that which his duty requires him to do, or make a gain for himseíf in any manner whatever, at the expense of his client in respect to the subject of any transactions connected with or arising out of the relation of attorney and client, beyond the amount of a just and fair professional remuneration, to which he is entitled. (Kerr on Frauds, p. 163.) Yet the law does not go so far as to prohibit an attorney from purchasing from his client. That is, he is not incapacitated by virtue of his relation as an attorney to Purc^ase< If> however, he purchases a client’s property during the continuance of the relation of attorneyship, which is the subject-matter of such relationship, the burden of proof- lies on him to show that the transaction has been perfectly fair, and he must be able to show that a just and adequate price has been given. The important question, therefore, as to the validity of the conveyance from Samuel P. Woods and wife to Luther H. Wood, and the transfer from Luther H. Wood to David E. James, depends upon the justness and fairness of the transaction with Samuel P. Woods. If James took no advantage of him by virtue of his professional position; if he acted honestly and honorably by him in thb matter; and if *208 Woods received a just and fair price for his .. . , . . n . , claim, the transaction may be iuily sustained after the length of time it has stood unchallenged, although James purchased for his own interest, and not as the attorney or agent of Woods.
4. when not set *209 6. Adverse possession ; statute of limitations. *208 In the special questions of fact upon which the jury were requested to find, they answered, that although Luther H. Wood was acting for James in procuring said deed to himself from Samuel P. Woods, and that George B. Wood and James thereafter held said land in common, that the consideration for said conveyance was the full value of said lands at the time; that the transaction was, in all respects, fair and open; that to the best of their knowledge, said James, at the time he obtained the execution of said deed from Samuel P. Woods, through his agent Luther H. Wood, disclosed to said Samuel P. Woods the true state of his (Woods’s) title to the land, and that there was no concealment or deception practiced by James in the transaction. These findings would seem to conclude all attacks upon the transaction between James, Luther H. Wood, and Samuel P. Woods, as to the conveyance of September 8, 1858. Counsel claims, however, that the findings are not .■sustained by die evidence, and points to the fact that the notes of Luther H. Wood given for the land were never paid, and to the action of James in sending Luther H. Wood, .an agent, to obtain the conveyance ostensibly for himself, when in fact such conveyance was for the benefit of the attorney of the grantor. As to the non-payment of the notes, ■upon the record as presented, little needs to be said. It is not shown that Luther H. Wood was insolvent at the execution of these notes, or insolvent at the time the action was brought for their recovery. It is shown that Samuel P. Woods accepted the notes in payment of the land, transferred them to one J. J. Park, and received stock therefor. Why the action for their recovery was not prosecuted to a successful result, it is impossible to tell. It is true that Luther H. *209 Wood made the defense of want of consideration, but the facts would not have sustained such a defense. Therefore, if the action had been properly prosecuted, the notes ought to have been collected. The indirect means by which James made the purchase through the medium of a third person is, in itself, at the first blush, calculated in some degree to awaken suspicion, and if there had been evidence of want of good faith on his part, or any question as to the adequacy of the price paid, or if the transaction had been challenged by the vendor within a reasonable time, this court might say that sufficient evidence of the fairness of the transaction was not introduced to uphold the conveyance. But there is no evidence that James, before the purchase, concealed the true state of facts relating to the land from Samuel P. Woods, or that he made any suggestion to Woods, depreciating or questioning his title, or that he in any way urged or. suggested to him to conveyance. The testimony is, that James settlers that they had his influence use a good title; that over his client to his advised or make the advised the he did not prejudice; that the vendor was upon the land; that the agent, at the time, acted bona fide, and that Woods had full opportunity to judge of the fairness of his sale. The only blot on the action of Luther H. Wood is his refusal to pay the notes when due, and his setting up a false defense when sued thereon. Yet his refusal to pay the notes and his false defense were long after the conveyance, and at that time it does not appear that he was acting either as the agent of David E. James, or under his advice or direction. For all the purposes of this case the transaction between James, Samuel P. Woods and Luther H. Wood in regard to the conveyance at its date thereof, was fair and reasonable. The only thing which appears that might create suspicion is, that Luther H. Wood did not then disclose to Samuel P. Woods that his purchase was for James. Yet, under the circumstances of this case, we do not perceive how the failure to disclose his principal in any way injured Woods. It is ap *210 parent that the latter was willing to sell, knew the value of the interest he sold, dealt with Luther H. Wood upon equal terms with him, and free from any influence, professional or otherwise, from his attorney, and received all the land was worth. Thereafter he abandoned the premises, permitted James and his grantees to occupy the premises for upward of fifteen years, permitted them to. pay all the taxes and to make thereon lasting and valuable improvements costing many thousands of dollars. During all this time he never made any charges of fraud or bad faith against Luther H. Wood or David E. James, and never demanded any possession of the premises or any part of the proceeds arising from thé sale thereof. Therefore, upon the facts and the findings of the jury, if Samuel P. Woods had been the plaintiff in the court below instead of his grantee, Mary A. Yeamans, he would not have been entitled as a matter of law to have the conveyance of September 11, 1858, set aside by the court. This much is at least well settled : If after a full knowledge of all the circumstances, the client shall elect to confirm the sale to the attorney, and the influence no longer exists, such election will be binding.
6. conveyance we-wiiena’ not' But if David E. James, through his agent Luther H. Wood, obtained the conveyance of the land under the deed of September 11, 1858, for himself, and not as the attorney and agent °f Samuel P. Woods, the subsequent deed 1° the plaintiff Mary A. Yeamans, of January 24, 1874, carried nothing, as by his deed to Luther H. Wood, Samuel P. Woods had parted with all of his interest, and as such deed, if obtained by David E. James for himself, was not void, but only voidable, Samuel P. Woods was the party to have it avoided, and not his grantee under a subsequent deed. (Gray v. Ulrich, 8 Kas. 112; Cowan v. Barret, 18 Mo. 257; Leach v. Fowler, 22 Ark. 143; Wall v. Cockerell, 10 H. L. C. 229.)
Counsel for plaintiff asserts that David E. James took the transfer and possession of the property from Luther H. Wood as attorney and agent for Samuel P. Woods, and was merely *211 holding during his lifetime the legal title of the property as trustee for Samuel P. Woods. The only possible evidence tending to prove this are the recitals in the compromise agreement with Silas Armstrong, of the date of July 18,1859, and' the fact that the deed from Samuel P. Woods to Luther H. Wood, and the transfer thereon from Luther H. Wood to James,- were not recorded during the lifetime of the latter. While it is true that in the deed of compromise and release to Armstrong, James purported to release for Samuel P. Woods as his attorney, yet it appears from the evidence uncontradicted, that at the making of such agreement Armstrong was informed by James that he was the owner of Woods’s claim, and that Woods had no interest therein; but Arm-strong insisted upon having Woods’s name inserted, notwithstanding that he had parted with his interest, and that it was held by James, out of abundant caution, to prevent any further possible trouble or litigatipn over the property. While the conveyance of July 18, 1859, was not filed for record until July 6, 1874, after the death of David E. James, yet all the words and acts of James after the transfer of such conveyance to himself, clearly show that he claimed the ownership to the property for himself, and not for Samuel P. Woods. His statements were to that effect at the time of his compromise with Armstrong. His laying out the land into lots and blocks; his transfers and sales of parts thereof; his payment of taxes, and the erection of valuable improvements thereon, were additional evidence of such ownership.
Again, it is a very significant fact that Samuel P. Woods, after surrendering the possession of the property under the conveyance of September 11, 1858, never made any com- • plaint of the transactions of David E. James, never in his lifetime questioned his possession of ownership, and although •living not very many miles from the property, and knowing that it was becoming of great value as a part of a large city, never made any claim thereto during the life of James, or called him to account for any of the proceeds of such lands. The conduct of Samuel P. Woods after the execution of the *212 conveyance of September 11, 1858, is strong evidence in itself that he did not understand that James was holding the title of the premises in trust for himself, or that he had any interest or estate therein. If he did not so understand, can it be urged with reason that he was the victim of fraud or deceit practiced by James? The written compromise made by James with Armstrong, of the date of July 18, 1859, was filed for record March 17, 1860, and the mortgage of James to Armstrong, and the deed from James to Armstrong of the same date, were filed for record July 23, 1859. Thereafter, Samuel P. Woods had constructive notice of the contents of those instruments, and yet for about fifteen years he had been silent as to any fraud on the part of James, or as to any trust held by him, and even on the trial when called as a witness, no testimony was given by him tending to prove' any fraud or trust. It i’eally appears, taking all the evidence and circumstances together, that the plaintiff, and not Samuel P. Woods, discovered the assumed theory that David E. James was holding the legal title of the property during his lifetime as trustee, instead' of being the absolute owner thereof. Woods does not seem to have had knowledge of this theory, and the evidence upon the trial certainly did not establish it. Therefore, upon the merits of the case, we think the evidence and findings fully support the judgment — at least sufficient testimony is in the record to uphold the findings and judgment.
We have referred thus fully to the testimony disclosed upon the trial, in regard to the merits of the case, because with the views entertained by us of the law, the consideration of the alleged errors, which are at all debatable, becomes of less importance. Many of the alleged errors are wholly without merit. For instance, the objection made to the court sending the issues to the jury for trial is untenable. (Code, §267, Hixon v. George, 18 Kas. 253.)
The complaint of the overruling of the demurrer of plaintiff to the fifth defense is trivial, as plaintiff afterward filed a reply to the whole answer, and no proof was offered, or *213 attempted to be offered on the trial under such defense, nor was any question concerning it submitted to the jury. *
Again, the exception to the charge of the court, being a general one, is not available, as the whole charge was not erroneous, nor was it in its general scope or meaning erroneous. (Sumner v. Blair, 9 Kas. 521.) The court gave thirteen of the instructions asked for by plaintiff, and refused several others. In our opinion, one or two of these, relating to the rule which throws upon the attorney dealing with his client the burden of proving the fairness of the transaction, ought to have been allowed, but the special -findings of the jury amply establish the proposition that such error was not prejudicial to the rights of the plaintiff. So, also, in our examination of the record, we find no material error in the admission or rejection of evidence, or in the other rulings of the court.
After an examination of all the record, we do not perceive that any substantial right of the plaintiff below, has been affected, and therefore we think upon the whole record, the judgment of the district court must be affirmed.
All the Justices concurring.