Wills v. Wood.

WILLIS ·WILLS, JR., *et al.*, v. GEORGE B. WOOD, *et al.*

1. ATTORNEY'S PURCHASE *from Client, Sustained.* While to sustain a purchase made by an attorney from his client of property, in a controversy concerning which the attorney is employed, it must be affirmatively shown that the transaction is fair, yet this rule does not exclude the weight which is to be given to presumptions arising from lapse of time, acquiescence, and the death of the parties and witnesses; and *held,* that these considerations are entitled to great weight in this case, in 'which a purchase of real estate by an attorney from his client is not challenged till more than eighteen years after the purchase, and in which no excuse ·for the delay is shown — neither absence, ignorance, nor inability — and in which both client and attorney are dead'; and that the ruling of the district court sustaining the purchase must be upheld, although all the details and circumstances of the dealings between attorney and client cannot be fully disclosed.

2. PARTY, *When an Incompetent Witness.* Where one of the parties to an action is the administrator or heir of a deceased person, the adverse party may not testify in his own behalf as to any transaction or communication had personally with such deceased person, (Civil Code, § 322;) and where there are two adverse parties, claiming under the same title, and both were present at an interview with such deceased person, neither is competent to testify as to the conversation then had, although it was in fact carried on entirely between the deceased and the other party.

3. GRANTOR, *When not to Deny Execution of Deed.* Where an action is brought challenging a title claimed by an alleged deed to the ancestor of defendants, and plaintiffs in their petition copying the deed allege that it is a forgery, but further allege that, at a certain interview at which the defendants' ancestor was present, certain bonds were executed and exchanged between them and such ancestor, and the real question is whether this deed offered in evidence is the instrument executed at the time of such interview instead of a title bond as claimed by plaintiffs, *held,* that the party plaintiff whose name appears as grantor in such deed is incompetent to deny her execution of that deed.

4. PARTY *as Witness; Acknowledgment of Deed.* A party is not disqualified from being a witness to prove the execution of a deed by the fact of his interest in the purchase; but an acknowledgment of a deed, being a *quasi* judicial proceeding, must be taken before some officer not interested in the land.

5. INSTRUMENT, *Alleged to be a Forgery, Received in Evidence, When.* Where a petition sets out a copy of an instrument and alleges that it is a forgery, and seeks to avoid a title apparently transferred by such instrument, the defendants may offer the instrument in evidence on identifying

it as the original of such copy, and without positive proof of the genuineness of the signatures, and this notwithstanding the fact that the acknowledgment, though apparently sufficient, is in fact unavailing by reason of a personal disqualification of the officer taking the acknowledgment arising from interest in the land conveyed. The instrument is thus placed before the court in order that upon all the testimony, both direct and circumstantial, it may determine the issue of forgery presented by the pleadings.

*Error from Wyandotte District Court.*

ACTION brought July 21, 1874, by *Willis Wills, Jr.*, and other heirs of Willis Wills, against *George B. Wood*, and numerous other defendants. Trial by the court, in July, 1876, when the court made findings of facts as follows:

"1. That Willis Wills, sen., the ancestor of these plaintiffs, did, in 1854, file his intent to preëmpt the land in suit, in the proper land office. That afterward one Silas Armstrong obtained a patent from the United States to the same land, with other land adjoining thereto.

"2. That to enable the said Willis Wills, (together with others interested, who claim title to this and other land included in said patent,) to compromise and settle all disputes in relation to such land of the said Willis Wills, sen., with the said Silas Armstrong, the said Willis Wills, sen., did, on the 8th day of July, 1858, join in a power of attorney to one David E. James, whereby the said James had full and ample power and authority to settle and compromise with the said Armstrong all suits involving the title to such land, and to compromise and settle with said Armstrong all questions in relation to such title.

"3. That on the 10th day of July, 1858, the said Willis Wills, sen., and his wife, Mary Jane Wills, made, executed and delivered to the said David E. James a quitclaim deed to all the interest that they then had in such land, for a good and valuable consideration.

"4. That on the 14th day of October, 1858, the said Willis Wills, sen., died, leaving surviving him the said wife and several children, plaintiffs herein.

"5. That on the 18th day of June, 1859, the said David E. James attempted, as the agent of the said Willis Wills, sen., and by virtue of said power of attorney, to compromise with the said Silas Armstrong in relation to the said claim of Willis Wills, sen.

26 — 28 KAS.

"6. That by such attempted compromise the said David E. James obtained from said Armstrong a deed to one three-eighths interest in a portion of said land, and a one-half interest in certain other portion of same, and that the title thereto was taken in the name of said David E. James.

"7. That in such deed no mention is made of the interest of the said Willis Wills, sen.

"8. That the sole and only consideration for such deed was the deed at the same time made by the said James to said Armstrong of the balance of the interest in and to said land claimed by the persons so executing such power of attorney.

"9. That in pursuance of such compromise, the suits and legal proceedings pending in court in relation to the title to such lands were dismissed; and that afterward, a suit between said Armstrong and the widow and heirs of said Willis Wills, sen., involving the title to said land, was revived, and a judgment of such court was obtained against the defendants therein. That the last-named judgment remains unreversed.

"10. That in the year 1858 the said David E. James took possession of the land in suit, and has occupied same, by himself, heirs and grantees, ever since.

11. That the said deed from the said Willis Wills, sen., and wife, dated July 10th, 1858, to the said David E. James, was not certified to have been acknowledged before any person until the 21st day of July, 1859, when such certificate of acknowledgment was made by one Luther H. Wood, then a justice of the peace in and for Wyandotte, who certified that the said Mary J. Wills acknowledged the same to be her act and deed, and that one Geo. B. Wood, who signed the said deed as witness thereto, proved that the said Willis Wills, sen., acknowledged the execution of such deed at the time that he so signed same.

"12. That said last-mentioned quitclaim deed was placed upon the records of deeds for said county on the 23d day of July, 1859.

"13. That the plaintiffs herein have had notice of the existence of such last-mentioned quitclaim deed from Willis Wills, sen., and wife, to the said David E. James, since the year 1860.

"14. That there is no proof of fraud in the execution of such deed. But there is a suspicion of such fraud, but not founded upon the evidence.

"15. That the said George B. and Luther H. Wood had

some claim to and interest in said land at the time said David E. James so acquired title thereto in his own name, and which claim and interest they derived from and through the said David E. James.

"16. That said power of attorney was revocable by the majority thereto.

"17. That said power of attorney was not coupled with an interest in the said David E. James, either by the terms of the power, or otherwise."

As conclusions of law from the foregoing findings, the court found as follows:

"1. That said deed of July 10th, 1858, revoked the said power of attorney so far as the said Willis Wills, sen., conferred power upon said David E. James.

"2. That if said deed did not so revoke such power, the death of Willis Wills, sen., did have that effect.

"3. That there was no fraud in the execution of such deed.

"4. If there was fraud in same, all remedy therefor is barred by the statute of limitation.

"5. That the plaintiffs cannot recover in this suit, but that the defendants do recover their costs herein expended."

Judgment was thereupon rendered accordingly for defendants. The plaintiffs bring the case here.

*James M. Mason,* for plaintiffs in error; *Nelson Cobb,* of counsel.

*O. H. Dean,* and *Wallace Pratt,* for defendants in error.

The opinion of the court was delivered by

BREWER, J.: This action resembles in many things that of *Yeamans v. James,* 27 Kas. 195, and is, like that, a controversy respecting certain lands in Wyandotte reserve No. 1, which were patented in 1857 to Silas Armstrong. It appeared in that case, as in this, that there were several settlers occupying different portions of this reserve, between whom and Armstrong, the patentee, a dispute arose as to title. One David E. James was employed by the settlers as an attorney to look after their interests. They all signed a power of attorney to James, giving him

full authority to make any compromise and arrangement he might deem best with Armstrong. He did in fact make a compromise with him by which he received a conveyance of an undivided three-eighths of the land, subject to a mortgage of fifty dollars an acre. This conveyance he took to himself personally. This was in 1859. As to the particular tract of land involved in that case, as well as to that in this, the claim of defendants is, that James, subsequently to the giving of the power of attorney, obtained title from the settler, and the contest in each case is as to the validity of the conveyances by which these titles are claimed. In that case the controversy was between the grantee of the settler and the heirs of James, now deceased, and others. In this case it is between the heirs of the settler on the one side, and the heirs of James, and purchasers from him, on the other. We shall not attempt, in this opinion, to review the whole history of the transaction, but refer to that case for its general features. Here we shall notice briefly what seem to be pivotal questions and matters in which this case differs from that. The power of attorney above referred to from the settlers to James was dated July 8, 1858, and was signed by all the settlers, Willis Wills, the ancestor of the plaintiffs herein, included. It was never acknowledged by Wills, but was acknowledged by the others within from ten to fifteen days after its date. The reason of the omission of this acknowledgment by Wills is found as alleged by defendants, and we think justly, in the execution, two days after its date, and on the 10th of July, of a quitclaim deed from Wills and wife to James. If this deed is genuine and valid, plaintiffs have no cause of action — and this they concede. This deed, as stated, was dated July 10, 1858, and was signed in the presence of George B. Wood as a witness. The acknowledgment is of date July 22, 1859, before Luther H. Wood, a justice of the peace, and recites a personal acknowledgment by Mary Wills, and certifies to proof by George B. Wood, the witness, of an acknowledgment by Willis Wills, then deceased. This deed was recorded July 23, 1859. This action was commenced July 21, 1874.

Willis Wills died October 14, 1858, leaving as his heirs a
widow and children, who are the plaintiffs in this action.
The plaintiffs in their petition copy this deed of July 10, and
allege that it is a forgery.    They further allege that shortly
before the death of Willis Wills, James, the attorney, and
George B. Wood, the medical attendant of Wills, who had
theretofore joined and confederated to obtain title to the
lands, came to the house of Wills, where he was lying sick,
and by fraudulent representations obtained from him and his
wife a title-bond and article of agreement to the effect that,
after the perfecting of Wills's title, James should pay him
$5,000, and should then be entitled to a deed of the property,
and not before, and that at the same time James delivered to
Wills a counterpart bond conditioned to pay $5,000, the con-
sideration named.    On the trial, the bond above named was
admitted in evidence, which was simply a bond from James
to Wills to pay $5,000 when James should procure from the
government of the United States a perfect and valid title
to the land, which bond was dated July 10, 1858, and in-
dorsed, with receipts, as follows: One of $2,200, dated
August 10, 1858, signed Mary Wills for Willis Wills;
one of $800, November 10, 1859, signed Mary Wills;
one of $50, February 30, 1860, signed Mary Wills; one of
$90, April 8, 1860, signed Mary Wills; and then one dated
April 30, 1860, acknowledging the receipt of an obligation
of $1,500 and a promissory note for $360 in full satisfaction
of the bond, signed Mary Wills.    The identity of this bond
was established beyond dispute.    We shall not attempt to re-
view all the testimony, which is very voluminous, nor discuss
the various propositions of law, as they rest upon the same
general principles involved in the case of *Yeamans v. James.*
We shall content ourselves with stating in a general way the
reasons which induce us to sustain the ruling of
the district court in favor of the genuineness of
the deed and the validity of the transaction.    And
first, as to the lapse of time: The deed was dated and signed
July 10, 1858, and was recorded July 23, 1859; this action

1. Attorney's
purchase from
client, sus-
tained.

was not commenced until July 21, 1874, two days less than fifteen years from the recording of the deed. While Mrs. Maples (formerly Mrs. Wills) testified that she did not know that the instrument signed by herself and husband was a deed until a year before the commencement of this action, yet it is abundantly shown by the testimony of her daughter and present husband, that at least in 1860 she knew that James claimed to hold a deed of the land. No excuse is given for this long delay — neither ignorance, absence, nor inability. She and her family, with the exception of one son, lived in the vicinity for two or three years after the deed. Where they have since resided is not affirmatively shown, except that it appeared that they were residents of Kansas City at the time of the trial, and also that once during the prior years she had called upon Mr. James at his residence. Further, she had possession of the bond given by Mr. James, for quite a length of time after its execution, and then at Mr. James's request gave it to him. She subsequently, through proceedings in the probate court, once more obtained possession of it, and thereafter again surrendered it to him. There is abundant testimony that by direction of Mr. James some money was paid to her. One witness testified that she admitted the correctness of the indorsements upon the bond, and that she had received the money as therein indicated. She commenced an action on that bond, which suit was apparently settled by the agreement indicated in the last receipt indorsed on the bond. The bond itself on its face suggests that the instrument given to Mrs. James must have been a deed. The bond is conditioned to pay $5,000 when title is perfected, and not when title is perfected and deed made. The deed is dated of the same date as the bond. She admits that the two instruments were executed on the same day. The date of the bond shows that it was not two or three weeks before the death of Willis Wills, as she testified, but months prior thereto. The fact that Willis Wills, who signed the power of attorney, did not acknowledge it with the others ten or fifteen days after its date, is fairly explainable only upon the theory that he

had conveyed and had therefore lost all interest in the land. The signatures to the deed were witnessed by Geo. B. Wood, and the acknowledgment was made before a justice of the peace, and this acknowledgment of her execution was of a date more than a year after the signing of the instrument. We are aware that some of the matters above referred to are contradicted by plaintiffs' witnesses, and some sought to be explained, but the testimony is there, and is sufficient to sustain the finding of the court; and notwithstanding the testimony of Mrs. Maples, we think her conduct and the conduct of the plaintiffs is far more in harmony with the facts as claimed by the defendants, than against them. No reason is given or suggested why during all these years the plaintiffs were silent. Having abandoned the land, left it in possession of defendants, and permitted sale after sale, the only reasonable theory is, that the plaintiffs all these years knew that the facts were as now claimed by defendants, and never moved in the matter until prompted by unexpected changes in value or suggestions of ingenious counsel. Counsel criticise, and perhaps justly, some of the language used by the district court in its findings, as well as the findings themselves, but, notwithstanding, we think the general conclusions of the district court were correct and must be sustained. It will be borne in mind that these transactions between Wills and James took place nearly a score of years before the trial; that both Wills and James, the two main parties therein, were dead, and it is not to be expected that the exact details of those negotiations and transactions could be disclosed as fully as though the actors in them were still living. While it is doubtless true that an attorney, to uphold a purchase from his client, must prove the transaction fair, yet that rule does not exclude the weight which is to be given to presumptions arising from long acquiescence, lapse of many years, and death of parties and witnesses. We think upon the record as it stands before us the conclusion of the district court was right, and it must be sustained.

Before closing this opinion we will notice a few objections

made to the rulings of the court upon admissions of evidence. Rebecca M. Forbes, one of the plaintiffs, a daughter and heir of Willis Wills, was a witness in the case, and testified to being present at a conversation of David E. James with her mother. She was asked to give that conversation, but the testimony was objected to and ruled out. It is not claimed that the mother would be a competent witness as to this conversation, because it would be a communication had personally by her with the deceased person, in a case in which the adverse parties are the administratrix and heirs-at-law of such deceased person. But it is claimed that though the party carrying on the conversation is incompetent, any party who heard the conversation is a competent witness thereto, and the cases of *McKean v. Massey*, 9 Kas. 602, and *Simmons, Adm'r, v. Sisson*, 26 N. Y. 264, are cited. As a general proposition, this is correct. The inhibition of the statute is only on the party having the communication or transaction with

2. Party, when an incompetent witness.

the deceased — but this case presents peculiar features, which we think justifies the ruling of the district court. Mrs. Forbes, as well as Mrs. Maples, was plaintiff, each claiming as heir of Willis Wills, and each seeking to recover from the administratrix and heirs of David E. James. Neither could testify under the statute as to any transaction or communication had personally with David E. James. Can it be possible that when the two are present with James and a conversation is carried on, that while neither could testify as to what James said to herself personally, she could testify as to what he said to the other? We think not. Such a ruling would be forbidden by the spirit, at least, of the statute. That statute plainly contemplates preventing one party from introducing in evidence conversations had with the ancestor of the adverse party, and this because the lips of such ancestor, closed by death, cannot be heard to give his version of the conversation; and where there are two persons on the one side, having like interests, they should, for the purpose of giving force to the statute, be considered as one, and neither be permitted to give her

-version of the conversations and statements of the deceased to the other in her presence. Counsel for defendants in their brief well expose the injustice of the ruling asked by plaintiff when they say:

"For instance, James might have conversed with the mother for five minutes about the bond, in the presence and hearing of the daughter, and then turned around and conversed with the daughter upon the same subject, in the presence and hearing of the mother, and while neither would be allowed to testify as to the conversation had with herself, either could testify as to the conversation heard by her between James and the other."

The ruling of the district court was correct.

Again, plaintiffs urge that the court erred in admitting the testimony of Geo. B. Wood, as to admissions made by Mrs. Maples, concerning certain indorsements on a bond showing receipts of money by her. No ground of objection was presented to the district court, but we think the testimony was competent anyway. Mrs. Maples was plaintiff, and denied ever receiving any money on the bond. It was competent to impeach her testimony by proof of statements to the contrary. As widow of Willis Wills, she inherited one-half of his estate, (Laws of 1858, p. 328, § 7,) and admissions against her interest were admissible. We see no error in this ruling of the district court.

Again, Mrs. Maples was a witness, and on her direct examination denied her execution of the deed of July 10th, 1858. Afterward, on motion of the defendants, this denial was stricken out from the testimony. This is alleged for error, and counsel urge very forcibly that the mere fact that the grantee in a deed is now deceased, does not of itself prove that the execution of the deed was a transaction had personally with decedent; for as they say, he may have been a resident of the east, never in Kansas, and the transaction had personally with an agent or representative of his. Unquestionably this is true, but the question in this case was, whether this deed was the instrument executed by Mr. and Mrs. Wills at the time both in their petition and the testimony of

the plaintiffs state that some instrument was executed. They allege in their petition, and also state in their testimony, that James, the decedent, brought the instrument to the house of Wills, and that the whole transaction was in his presence and with him personally. Now the single question being, not whether Mr. and Mrs. Wills ever executed a deed to James, but whether the instrument which the plaintiffs admit was executed to James was the one offered in evidence, and it being admitted that whatever instrument was executed

3. Grantor, when not to deny execution of deed.

was executed at the solicitation and in the presence of James, it does not seem to us that the court erred in ruling out the testimony. It is true she stated generally that that was not her signature, and that she neither signed nor acknowledged that deed; but still the question was, was that the instrument she signed in James's presence and under his solicitation? If she could not testify affirmatively as to the character of the instrument she did sign, she could not testify negatively that the instrument offered was not the one that she did sign. In this view of the question, and these limitations that the disputed facts place around it, we think the ruling of the court must be sustained. We may add further, that in view of all the other testimony in the case we think the court should have found as it did, even with her testimony before it that she never signed nor acknowledged that deed.

One other question remains. The deed, as heretofore stated, was witnessed by George B. Wood. The acknowledgment was before Luther H. Wood, a justice of the peace. The court in in its fifteenth finding finds "that the said George B. Wood and Luther H. Wood had some claim to and interest in said land at the time said David E. James acquired title thereto in his own name, and which claim and interest they derived through and from said David E. James."

Now counsel argue that by reason of interest George B. Wood was incompetent to prove the execution and Luther H. Wood incompetent to take the acknowledgment of the deed; that therefore the deed was inadmissible in evidence,

without direct proof of its execution. Whatever may have been the rule under the statutes of 1855, and at the time of the signing of this deed, at the date of the acknowledgment the laws of 1855 had been repealed; and under the laws of 1859, then in force, Geo. B. Wood was a competent witness to prove the execution of the deed. (Laws of 1859, ch. 89, p. 544, § 1; ch. 30, § 17, p. 291; ch. 25, p. 131, § 320.) Sec. 321, ch. 25, does not not change this rule. (*McCartney v. Spencer, Ex'r*, 26 Kas. 62.)

<div style="margin-left:2em">4. Party as witness; acknowledgment of deed.</div>

Again, while it may be conceded that Luther H. Wood, if interested in the land, was incompetent to take the acknowledgment of a deed in relation thereto, on the principle that an acknowledgment is a *quasi* judicial proceeding, and that no man can sit as a judge in a case in which he is interested, (*Beaman v. Whitney*, 20 Me. 413; *Groesbeck v. Seeley*, 13 Mich. 329; *Goodhue v. Berrien*, 2 Sandf. Ch. 630; *Wasson v. Connor*, 54 Miss. 351;) and while the district court finds that he was interested with George B. Wood and James in the land, we have searched the record through for any evidence to support this finding. He testified that at one time he had a lease of the ferry at the Kaw river, which in some way seems to have been connected with these real-estate interests, and that he sold it to George B. Wood and David E. James. Aside from that, we fail to see anything that shows he had any interest in or connection with this land, or any of the transactions involved in this case. We are inclined to think, as there were several cases pending in the court at about the same time, involving different portions of this reserve No. 1, that the trial court must have confounded the testimony in some of those cases with that in this, and that there was nothing apparent in this case showing that Luther H. Wood was interested or disqualified from acting as a justice of the peace.

<div style="margin-left:2em">5. Instrument alleged to be a forgery, received in evidence.</div>

But further, independent of the testimony afforded by the acknowledgment, we think it was right for the court to admit this deed in evidence. The question before it was not, whether any instrument had been executed by Wills and wife, because

the plaintiffs in their petition admitted the execution of some instrument; the only question was, whether this was the one they had executed. The petition set forth a copy of the deed, and all that was necessary was to identify the instrument offered as the original of such copy. It was right to admit it as evidence, and then on all the testimony, direct and circumstantial, determine whether this was the instrument which they in fact had executed. We think therefore the ruling of the district court in this matter must also be sustained.

These are the only questions which we deem it important to notice, and in them we see no error; and upon the whole record we think the ruling of the district court was right, and that it must be sustained.

The judgment will therefore be affirmed.

All the Justices concurring: