MARY A. YEAMANS v. JENNIE M. JAMES, *et al.*

1. CASES, *Cited and Followed.* The cases of *Yeamans v. James,* 27 Kas. 195; *Wills v. Wood, James, et al.,* 28 Kas. 400; *Wilkins, et al., v. Tourtellott, et al.,* 28 Kas. 825, cited and followed.

2. ERROR, *Immaterial.* An error of the trial court in finding that a party who had a supposed equitable interest in a certain piece of land, *deeded* his interest in the land to the defendant, who held the legal title thereto, and his grantees, while in fact such party simply *released* his interest in the land to the defendant and his grantors, *held,* not to be material error.

3. FINDING, *Correct.* A finding of the trial court that a certain settlement was free from fraud and deception, *held,* to be correct under the evidence.

4. EVIDENCE, *Correctly Excluded.* The exclusion of certain evidence, *held* to be correct under § 322 of the civil code, and *Wills v. Wood, et al.,* 28 Kas. 400.

5. COURTS OF EQUITY— *Things Discouraged.* Courts of equity seldom encourage speculations in stale and doubtful claims; they seldom encourage the overturning of settlements voluntarily made and long acquiesced in; they seldom encourage the disturbance of titles long vested, long enjoyed, and where all the parties for many years have acted as though they considered all questions with reference to titles as equitably settled and permanently at rest; and where many of the original parties and their witnesses have passed away, and much of their evidence in the meantime has been lost or destroyed; and where the titles can no longer be examined by courts of equity, or any courts, with that certainty of doing justice which could have been done at the beginning, while all the parties and their witnesses were living, and while all the evidence was fresh and easily to be obtained. Peace and repose are generally better in such cases than disturbance and turmoil.

*Error from Wyandotte District Court.*

ACTION in equity to declare a 'trust, and for the recovery of certain real estate situated in Wyandotte county, brought by *Mary A. Yeamans* against *Jennie M. James* and others. Trial by the court at the July Term, 1876. At the December Term, 1876, the court made and filed the following findings of fact:

"*First.* That prior to 1858, one James Gladden filed a preemption claim to the land described in plaintiff's petition;

that one Silas Armstrong afterward located a float upon same land; that a dispute thereby arose between the said Gladden and Armstrong in relation to the title to said land.

"*Second.* That to enable said Gladden to protect his title to said land, he, in July, 1858, employed one David E. James, late husband of the defendant Jennie M. James, now deceased, to prosecute and defend all suits that might be brought affecting the title to said land, and also to make such compromise with said Armstrong in relation to such title as might seem proper to said James, who was then an attorney at law; that such power was given to said James by a written power of attorney.

"*Third.* That in 1859, the said attorney compromised with the said Armstrong by receiving in his own name a three-eighths interest in said land, and giving a quitclaim deed to Armstrong for the balance of said land, and further agreed to pay said Armstrong $50 per acre for the land so deeded to said attorney.

"*Fourth.* That said compromise was reduced to writing, and duly recorded in the office of register of deeds for Wyandotte county, Kansas, on the 23d day of July, 1859.

"*Fifth.* That by such compromise the said James became possessed of said three-eighths interest, and has held the same up to the time of his death, in 1871. The possession since that time has been held by his heirs and grantees.

"*Sixth.* That in March, 1860, the said David E. James and Gladden compromised and settled their respective claims to said land, and that said Gladden deeded all his interest therein to said James and his grantees.

"*Seventh.* That said last-mentioned settlement was free from fraud or deception.

"*Eighth.* That in 1874, the said Gladden deeded all his interest in said land to plaintiff."

And thereupon, from such findings of fact, the court found the following as conclusions of law:

"*First.* That by the compromise of 1859, the said attorney became the owner in trust of said land for said Gladden.

"*Second.* That by the compromise of 1860, between the said Gladden and James, the former was divested of all his interest therein in said lands, and had no interest therein in 1874, when he attempted to convey the same to plaintiff.

"*Third.* That the defendants recover their costs herein."

Upon these findings and conclusions the court rendered

judgment in favor of the defendants and against the plaintiff for costs. The plaintiff brings the case to this court for review. Other facts will be found in the opinion of the court.

*James M. Mason*, and *Nelson Cobb*, for plaintiff in error.

*O. H. Dean*, and *Wallace Pratt*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in equity to declare a trust, and for the recovery of certain real estate. The facts of the case, stated briefly, are substantially as follows: On

Statement of facts.

July 13, 1857, the United States conveyed by patent to Silas Armstrong, a certain tract of land in Wyandotte county, Kansas, known as "Wyandotte reserve No. 1," lying north of the Shawnee reserve, and between the Kansas and Missouri rivers and the line between the states of Kansas and Missouri. At the date of the patent there were several settlers upon the land claiming rights under the preëmption laws, among whom was one James Gladden, the grantor of the present plaintiff, Mary A. Yeamans. Litigation arose between Armstrong, the patentee, and these settlers, concerning their respective claims to the land. On July 8, 1858, these settlers jointly and severally executed a power of attorney to David E. James, a lawyer, by which the settlers jointly and severally appointed James their attorney to conduct, prosecute and defend all suits then pending, or to be brought, between Armstrong, or any person claiming under him, and themselves; and they also gave to James full power and authority to settle and compromise all their disputes concerning the land. This power of attorney was duly acknowledged and recorded. On July 10, 1858, James Gladden, one of the settlers and one of the persons who executed said power of attorney, with his wife, executed a quitclaim deed, conveying to George B. Wood all of Gladden's interest in the land. This deed of conveyance was handed to David E. James, to be held, as James and Gladden claim, in escrow, to be delivered to Wood upon his pay-

ing the full consideration therefor. Wood, however, claims, that the deed was an absolute deed, and was to take effect on the day of its execution, and that the delivery of the same to James, whom he claims was his partner, was a delivery of the deed to him. The testimony of Wood shows that upon the execution of the deed Gladden gave possession of the land to Wood. In the fall of 1858, Gladden removed from Wyandotte county to Miami county, and has never returned to the land. On July 18, 1859, James effected a compromise and settlement with Armstrong. The compromise was in writing, and was executed by Armstrong and wife on the one part, and by James, in his own name and in the name of the several settlers, on the other part, and provided, among other things, that Armstrong should convey to James an undivided three-eighths of the tract of land lying north of the old bed of Turkey creek, being about ninety acres, subject, however, to a mortgage to Armstrong of fifty dollars per acre, to be paid out of the first proceeds of sales of the land; and also, that Armstrong should convey to them an undivided half of the land lying south of Turkey creek. James and the settlers were to release by quitclaim deed, to Armstrong all their interest in the remaining portion of the land. These stipulations of the compromise and settlement were fully carried out. The deed from Armstrong was taken in the name of James, for himself and the settlers. The only land now in controversy is a portion of the land previously occupied and claimed by Gladden; but, as before stated, Gladden was not in the possession of the land at the time this compromise and settlement were effected. It was then in the possession of Wood; and ever since that time Wood and the other defendants in this case have been in the possession of the land, claiming to own the same and paying the taxes thereon. James and Gladden not only claim that the deed executed by Gladden to Wood was only an escrow, but they also claim that Wood never complied with the conditions authorizing the delivery of the same; and therefore that Wood's inchoate right to Gladden's interest in the land utterly

failed. This, however, Wood disputes. Wood claims that the deed was an absolute deed; that it conveyed to him all of Gladden's interest in the land; and that he performed all the conditions with respect to the deed and the land which he was required to perform. If we could say that Wood's claim is correct, it would require an affirmance of the judgment of the court below, rendered in this case. But we cannot under the findings so say; and therefore, for the purposes of this case, we shall assume that the transaction in this particular was such as it is claimed to have been by James and Gladden. On March 5, 1860, James surrendered to Gladden the deed or escrow executed by Gladden to Wood, and made a settlement with Gladden concerning all the transactions previously had between them. Instruments in writing were executed and delivered by James and Gladden to each other respectively, as follows:

I, James Gladden, do hereby certify, ratify and fully confirm all acts and agreements whatsoever, made and entered into by virtue of a certain power of attorney by me given to David E. James, attorney at law, bearing date the 8th day of July, 1858, and which power of attorney was given for the purpose of conveying, or settling, or compromising certain suits pending between me and one Silas Armstrong, concerning certain real estate, &c.; and I do furthermore hereby acknowledge in full force and absolute settlement the receipt of a bond for a deed of my full portion of said real estate, obtained by said James from said Armstrong in their final compromise of my said suits, namely: my original claims, as against said Armstrong, being about forty acres, after allowing said David E. James, claiming under a deed of conveyonce from one Willis Wills, his full preëmption claim of one hundred and sixty acres on the land adjoining mine, according to a certain agreement and understanding between said Wills and myself as settlers on said lands, under and by virtue of his priority of settlement and preëmption claim made on said lands; and in accordance and by virtue of said compromise between said Armstrong and said James, my attorney, I do hereby acknowledge in full and absolute settlement the receipt of said bond for a deed to one three-eighths of said forty acres, being fifteen acres; and having allowed my said attorney, James, five acres of the same for his fees and for

moneys expended in the litigation of said suits, &c., I do, therefore, receive and accept in full and absolute and final settlement between said James and myself and all others claiming under me, the aforesaid bond for a deed to one undivided ten acres of my original claim of forty acres, in the west one-half of the S.W.¼ of section No. eleven (11), and in the east one-half of S.E.¼ of section No. ten (10).

Received also a certain deed as demanded in the notice attached hereto.

In witness whereof, I hereunto set my hand and seal, this 5th day of March, A. D. 1860.

His<br>JAMES X GLADDEN.<br>mark.

In presence of JOSEPH E. SNYDER, HENRY R. SEEGER.

STATE OF MISSOURI, COUNTY OF JACKSON, ss.   Sworn to and subscribed before me, this 6th day of March, 1860.

[Seal.]                    JNO. S. HOUGH, Cl'k.

By Louis P. Scott, D. C.

Know all men by these presents, that I, David E. James, of the county of Wyandotte and territory of Kansas, do hereby bind myself, my heirs and assigns, to convey unto James Gladden, his heirs and assigns, by a good and valid deed, one undivided ten acres of the west half of the S.W.¼ of sec. No. eleven (11), and of the E.½ of the S.E.¼ of sec. No. ten (10), in T. No. eleven (11), being in the forks of the Kansas and Missouri rivers, in the county of Wyandotte, K. T., and all consisting of one undivided ten (10) acres.   It is hereby covenanted and agreed that the aforesaid conveyance shall be made at any time within one year from the date of this instrument.   It is also agreed and understood that said conveyance is to be made subject to and in accordance with the terms and conditions of a certain mortgage given upon said real estate by said James to one Silas Armstrong, and which is recorded in the proper office of the county of Wyandotte, K. T.

In witness whereof, I have hereunto set my hand and seal, this 5th day of March, 1860.

DAVID E. JAMES.   [Seal.]

On the same day, Gladden assigned this bond to Henry R. Seeger by an instrument indorsed on the bond as follows:

Know all men by these presents, that I, the within-named James Gladden, in consideration of one thousand dollars to

me in hand paid by Henry R. Seeger, the receipt whereof I do hereby acknowledge, have bargained, sold, assigned and set over all my right, title, interest, claim, property and demand whatsoever in and to the within bond, unto the said Henry R. Seeger and his assigns forever.

In witness whereof, I have hereunto set my hand and seal, this 5th day of March, A. D. 1860.

His
JAMES X GLADDEN. [L. S.]
mark.

, In presence of LOUIS R. SCOTT, JOSEPH E. SNYDER.

STATE OF MISSOURI, COUNTY OF JACKSON. Be it remembered, that on this 6th day of March, 1860, before me, John S. Hough, clerk of the Kansas City court of common pleas, for Kaw township, in the county and state aforesaid, personally appeared James Gladden, who is well known to me as the person whose name is subscribed to the foregoing instrument of writing, and acknowledged the same to be his voluntary act and deed for the uses and purposes therein mentioned.

In testimony whereof, I have hereunto set my hand and affixed the seal of said court, at office in the City of Kansas, on the day and date above written.

[L. S.]          JOHN S. HOUGH, *Clerk.*

By Louis B. Scott, Deputy.

Recorded October 1, 1860, at 5 P. M.

V. J. LANE, *Register of Deeds.*

By James A. Cruise, D. R.

This bond and the assignment were recorded in the office of the register of deeds of Wyandotte county, Oct. 1, 1860.

Afterward, James satisfied his bond by a conveyance to one Joseph E. Snyder, by direction of Seeger, as evidenced by another indorsement on the bond, of which the following is a copy:

STATE OF MISSOURI, JACKSON COUNTY, ss. In consideration of one dollar to me in hand paid, and the absolute fulfillment of the within bond, by conveyance of six acres of land to Joseph E. Snyder, by a deed dated July 27, 1864, and recorded on the 23d of October, 1868, in liber L of deeds, on pp. 135 and 136, in the office of register of deeds in and for the county of Wyandotte, state of Kansas, this bond, re-

corded in said office in "Record A," p. 462, is hereby canceled and discharged, and absolutely fulfilled.

HENRY R. SEEGER.

KANSAS CITY, Mo., April 28, 1869.

Witnessed by JOSEPH E. SNYDER and R. LATHS.

Recorded July 1, 1869, at 9 o'clock A. M.

JAMES A. CRUISE, *Register of Deeds.*

The mortgage of $50 per acre held by Armstrong upon the land conveyed to James, in pursuance of said compromise and settlement, was paid and satisfied by Lewellyn E. James, the son of David E. James. In August, 1871, David E. James died; and many of the other principal actors in the foregoing transactions, including Armstrong and Wills, had also died before or about this time. On March 4, 1874, Gladden, who was then a resident of Buchanan county, Missouri, executed a deed for the land in controversy to Mary A. Yeamans, the plaintiff in this action, for an expressed consideration of $17,500; and thereupon, on July 11, 1874, Mrs. Yeamans commenced this action, in the district court of Wyandotte county, against the heirs of David E. James, deceased, and also against George B. Wood and Luther H. Wood, for the purpose of obtaining a decree that the defendants held the legal title to the land in trust for her benefit, and for the purpose of recovering the land from them. The defendants answered, setting up a general denial, and several other defenses. The case was tried by the court without a jury, at the July term, in 1876, and on December 23, 1876, the court made special findings of law and of fact, and rendered judgment in favor of the defendants, and against the plaintiff for costs. On June 20, 1879, a case was settled and signed by the judge of the district court for the supreme court, and on December 13, 1879, the case, with a petition in error, was filed in the supreme court. On October 3, 1882, the the case was submitted for decision to the supreme court, but even then the plaintiff, with the permission of the court, took twenty days further time within which to file a brief in reply to the brief of the defendants in error.

It will be observed that many of the principal facts in this case are identical with many of the principal facts involved in the cases of *Yeamans v. James*, 27 Kas. 195; *Wills v. Wood, James, et al.*, 28 Kas. 400; and *Wilkins, et al., v. Tourtellott, et al.*, 28 Kas. 825. There is however this difference: in none of the other cases was the fact of the settlement in 1860 between James and Gladden involved, while in this case the decision of the court below was founded principally upon the fact of such settlement, and the subsequent facts growing out of the same. The plaintiff in error raises several questions in this court, some of which have already been decided in the cases above referred to. Those questions already decided we shall not again discuss. There are still other questions raised or claims made by the plaintiff in error, which are so manifestly untenable that we shall not discuss them. We shall, however, mention the principal points made by the plaintiff in error.

1. Cases cited and followed.

The plaintiff in error claims that "the court erred in its third finding of fact, in finding that David E. James agreed to pay Silas Armstrong $50 per acre for the land deeded to James, the agreement as appears by the evidence being merely to subject the land so conveyed to the burden of $50 per acre." We think the finding of the court below is substantially correct. James did agree to pay said amount, and the land was conveyed subject to such payment.

The plaintiff in error also claims that "the court erred in its sixth finding of fact, 'that in March, 1860, the said David E. James and Gladden compromised and settled their respective claims to said land, and that said Gladden deeded all his interest therein to said James and his grantees.'" Now the court below did err, as it is claimed by the plaintiff in error. While the settlement and compromise were undoubtedly made between James and Gladden, as found by the court, yet Gladden did not *deed* his interest in the land to James and his *grantees;* but he simply *released* his interest therein, to James and his *grantors.* The title to the land was already in James, and there was no necessity for

Gladden or anyone else to execute any deed to James.  Glad-
den released his claim to five acres of the land to James, and
he transferred the title bond given by James to Gladden for
the other ten acres, to Seeger, and Seeger released his claim to
the ten acres to James.  This placed the entire title to the
land, equitable as well as legal, in James, and as fully as
though Gladden had executed a formal deed of conveyance
for the land to James.  We think the error of the court in
this finding is wholly immaterial, and is not suf-
ficient to authorize a reversal of the judgment.

2. Error,
immaterial.

The plaintiff in error also claims that "the court erred in
its seventh finding of fact, 'that said last-mentioned settle-
ment was free from fraud or deception.'"  We think this
finding is warranted by the evidence.  The set-
tlement was made on March 5, 1860, a long time
after the compromise between James and Armstrong, and at
a time when Gladden ought to have known all the facts with
reference to the same, and with reference to his rights as be-
tween himself and James, and many years afterward elapsed
before Gladden supposed himself to have been defrauded;
and this although James and the other defendants continu-
ously occupied the land, claiming it as their own.  If Glad-
den had really supposed that the settlement between himself
and James was not fair, why did he not commence an action
to set aside such settlement, and to recover the land?  This
he did not do, and it does not appear that he ever even
thought of doing so,  The evidence certainly warranted the
court in making the *affirmative* finding as it did, that the
"settlement was *free* from fraud or deception."  But suppose
that it was not free from fraud and deception: can it be sup-
posed that Gladden did not discover the fraud until within
two years next preceding the commencement of this action?
And therefore, even if fraud was committed, is not the plain-
tiff's claim barred?  ( Civil Code, §18, subd. 3.)

3. Finding,
correct.

The plaintiff further claims that the court below erred in
refusing to permit the said Gladden to testify with respect to
certain matters.  Now this testimony was with respect to cer-

tain transactions had between Gladden and James.　Since these transactions were had, James died, and the defendants now hold under him, and Gladden transferred his interest to the plaintiff; and hence we think the evidence was incompetent. (Civil Code, § 322; *Wills v. Wood*, 28 Kas. 400.)　Besides, by this testimony of Gladden the plaintiff attempted to contradict the contents of a written · instrument.　This we also think rendered the evidence incompetent.

*4. Evidence, correctly excluded.*

These are about the only questions which we need to mention specially.　The other questions presented by the plaintiff we have carefully considered, and do not think they are tenable; and upon the entire facts of the case we think the judgment of the court below was right — technically, legally, and equitably right — and it ought to be affirmed.　Courts of equity seldom encourage speculation in stale and doubtful claims; they seldom encourage the overturning of settlements voluntarily made and long acquiesced in; and they seldom encourage the disturbance of titles, long vested, long enjoyed, and where all the parties for many years have acted as though they considered all questions with reference to titles as equitably settled and permanently at rest; and where many of the original parties and their witnesses have passed away, and. much of their evidence in the meantime has been lost or destroyed; and where the titles can no longer be examined by courts of equity, or any courts, with that certainty of doing justice which could have been done at the beginning, while all the parties and their witnesses were living, and while all the evidence was fresh and easily to be obtained.　Peace and repose are generally better in such cases than disturbance and turmoil.

*5. Courts of equity—things discouraged.*

The judgment of the court below will be affirmed.

All the Justices concurring.