THE STATE OF KANSAS V. DAVID T. RIDDLE.

1. INFORMATION; *Change of Venue; Trial on Copy of Information.* Where a criminal case is taken on a change of venue from one county to another, it is not necessary that the original information, or any other original paper, should be transferred to such other county; but it is the duty of the clerk of the court in which the cause is pending to make out a full transcript of the record and proceedings in the cause, and to transmit the same, duly certified under the seal of the court, to the clerk of the court to which the removal is ordered, and the defendant may then be tried upon such duly-certified transcript.

2. CERTIFYING, *Record and Proceedings.* Where the transcript of the record and proceedings in a criminal case appear to have been duly certified under the seal of the court, and the court below held that it was so certified, *held,* that such court did not commit error in so holding, although an affidavit may have been presented to the court below showing that the affiant *believed* that the certificate, with the seal affixed, was not properly made out and attached to the transcript.

3. HOMICIDE; *Character of Deceased.* As a rule, in criminal cases for murder, evidence showing that the deceased was a "quarrelsome, turbulent, and violent man," should be excluded; and the facts of this case do not present one of the exceptions.

4. LIMITING ARGUMENT, *No Error.* The court below did not err in this case in limiting the argument of counsel to the jury to four-and-a-half hours on each side.

*Appeal from Jewell District Court.*

INFORMATION for murder. All necessary facts and proceedings, and questions presented, fully appear in the subjoined opinion. The defendant was convicted at the September Term 1877, and he now appeals to this court.

*E. M. Burr,* for defendant.

*A. M. Corn,* county attorney of Smith county, for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution for murder in the first degree. It was originally instituted in Smith

county, but was taken on change of venue at the instance of the defendant, David T. Riddle, to Jewell county, where it was tried, and the defendant found guilty of murder in the second degree, and sentenced therefor to ten years' imprisonment in the penitentiary. From that sentence he now appeals to this court. The record shows that —

*Statement of the case.*

"The case being called for trial, (in the district court of Jewell county,) and a jury duly impanneled and sworn, the state proceeded to present its case to the jury, upon which the defendant demanded that he be tried upon the original information, and not upon a copy certified from the clerk of the district court of Smith county. Defendant also objected to a trial at that time upon the ground of a lack or defect of certificate to the transcript from Smith county, said certificate being made, and seal of said court affixed, by said clerk, out of said Smith county, and in the town of Jewell Center, after said case was called, and the said jury impanneled. The court overruled the said several objections in both cases, and ordered said trial to proceed, to which the defendant at the time excepted."

No evidence was introduced to show that what the defendant claimed with reference to said certificate being made and attested out of Smith county, was true. The trial then proceeded. The state introduced its evidence, which clearly showed that the defendant was guilty of murder in the second degree, as charged in the information, by feloniously stabbing and killing the deceased, David Frazier, with a knife. The defendant then introduced his evidence, which amounted to but little more than to show that the deceased was a larger, stronger, and more athletic man than the defendant. The record also shows that a witness was then introduced by the defendant, and —

"Said witness was then asked, 'Are you acquainted with the character that Frazier bore as a quarrelsome, turbulent, and violent man?'— to which counsel for the state objected. The objection was sustained, and the defendant excepted. Defendant then offered to prove that Frazier had the reputation of being a quarrelsome, turbulent and violent man, to which the state objected. The objection was sustained, defendant excepting. The defendant then rested his case."

The court thereupon instructed the jury. We think the charge was perfectly fair toward the defendant. The defendant however took exceptions to several of the instructions given, and also took exceptions to the refusal of the court to give several others. The court ordered that the argument of counsel to the jury should be limited as to time to four-and-one-half hours on each side, to which the defendant excepted. After the argument of counsel, the jury retired to consider of their verdict, and afterward brought in a verdict, finding the defendant guilty of murder in the second degree, as before stated. The defendant moved the court for a new trial, upon various grounds, among which were the following: The defendant was not tried upon the *original* information, nor upon a *properly-certified* transcript of the record and proceedings from the Smith county district court; counsel were *improperly limited* as to time in their argument to the jury; and the verdict was *against the law and the evidence*. No mention was made in the motion for a new trial concerning the supposed errors of the court below in excluding evidence, or in giving or refusing to give instructions. Therefore, as to these matters, see *Nesbit v. Hines,* 17 Kas. 316, and *Fowler v. Young,* 19 Kas. 150.

On the hearing of the motion for a new trial the defendant read an affidavit of one James John, stating substantially that the affiant saw the clerk of the district court of Smith county affix his official seal to "some papers during the trial of the case of The State of Kansas v. David T. Riddle, in Jewell county, and this affiant verily *believes* that the certificate attached to the transcript in said case was one of the papers to which he as aforesaid at the place and time aforesaid affixed his said seal." The court below overruled said motion for a new trial, and the defendant excepted — and thereupon the court sentenced the defendant as aforesaid.

We do not think that the court below erred in trying the defendant upon a certified transcript of the information, instead of upon the original information. The statute provides that when a change of venue is

1. Trial on copy of information.

46 — 20 KAS.

ordered in a criminal case, "the clerk of the court in which
the same is pending shall make out a full transcript of the
record and proceedings in the cause, including the order of
removal, the petition therefor, if any, and the recognizance
of the defendant, and of all witnesses, and shall transmit the
same, duly certified under the seal of the court, to the clerk
of the court to which the removal is ordered." (Gen. Stat.
850, § 188.)   It will be seen that nothing but a "*transcript*
of the record and proceedings"—no original paper of any
kind—is authorized to be transmitted by the clerk to the
county to which the case is ordered to be removed.   Now the
"record and proceedings" in a criminal case will certainly
include the information; and there is no statute authorizing
the clerk in any case to permit the original information to
be taken from his custody or control.

The "record and proceedings" of the district court of
Smith county appear to have been "duly certified, under the
seal of the court."   And there is nothing in the
record showing the contrary, except the mere
*belief* of James John, as shown by his affidavit.
But suppose the facts were just as John "believed" them to
have been: would that require a reversal, under the circum-
stances of this case?   We must presume however, as against
John's belief, that the record and proceedings were duly cer-
tified under the seal of the court, just as they appear to be
in the record.

2. Certifying record and proceedings.

Even if the defendant has properly saved his exceptions
to the ruling of the court below excluding the evidence as to
the character of the deceased for being a "quarrelsome, tur-
bulent, and violent man," (see *Nesbit v. Hines,*
and *Fowler v. Young,* supra,) still we do not think
that the court below erred in excluding it in this case.   Such
evidence as a rule should be excluded; (*Wise v. The State,*
2 Kas. 419;) and the facts of this case do not present one of
the exceptions.   There is nothing in the case to show that
the deceased intended or desired, or was likely to commit more
than a mere assault and battery with his fists upon the de-

3. Character of deceased.

fendant, or that he could have done more than that, at that time, even if he had so desired. There was no evidence that the deceased was armed, or that he ever carried arms. Whether the deceased would even have committed an assault and battery, if the defendant had said he would not fight, is not shown. The two men were nearly of the same size, and both had friends present at the time the killing was done. There was no evidence tending to show that the defendant knew the character of the deceased, or his strength; and the defendant did not offer to introduce any such evidence. The

Statement
of facts.
facts concerning the killing are substantially as follows: On the 7th of November 1876, a singing-school was held in Laphan's church, in Smith county, at which singing-school several young men and young women were congregated, among whom were the defendant and the deceased. During the intervals between the singing, and sometimes during the singing, the defendant played on a French harp. The deceased offered to give the defendant a "nickel" if he would stop playing. The defendant told the deceased to go away, and mind his own business, whereupon the deceased invited the defendant out-doors to settle the matter, and the deceased himself went out-doors. The defendant then went to the door saying, "He is trying to run over me, and I will not stand it." He stopped at the door, and the deceased then struck at him with his right fist. The defendant said, "Let me alone, or I'll hurt you, you damned son-of-a-bitch." The deceased then struck at the defendant again, and the defendant stepped further back into the house. The door is in the east end of the house. The defendant continued to step back, and the deceased to follow him, until both were in the house, about ten or twelve feet from the door. Whether the deceased again struck at the defendant, or not, is not shown. What if anything further was said between them, is not shown. There were several persons around them however, and a great deal of confusion ensued. When they got into the house, about ten or twelve feet from the door, the defendant, without further warning, so far as

the record shows, stabbed the deceased with a knife, inflicting a mortal wound, from which mortal wound the deceased in a few minutes died. Whether the deceased at any time touched the defendant, is not very clear; but if he did, there was no evidence showing that he hurt or injured him in any respect. Previous to the defendant's stabbing the deceased, he (the defendant) had his hands in his pockets, or on his hips. Evidently the defendant was in no danger of having his life taken, or of having any great personal injury inflicted upon him. And probably he was in no danger of having even an assault and battery committed upon him, if he had avoided the deceased. The deceased simply desired to fight with the defendant·with the weapons that nature gave them; and if the defendant had frankly told the deceased that he would not fight, the deceased would in all probability have let the defendant alone. But the defendant seemed half willing at least to fight. He followed the deceased to the door, and said, "He is trying to run over me, and I will not stand it." He also said to the deceased, "Let me alone or *I'll hurt you*, you damned son-of-a-bitch." These are not the actions, and this is not the language, of a person who desires peace, and who will not hurt another except in self-defense.

The court below did certainly did not err in limiting the argument of counsel in this case as to time. The facts are few

**4. Limiting argument.** and simple, and the evidence occupies only twenty-three written pages of paper. Four-and-one-half hours of time were certainly sufficient for the defendant's counsel, in which to comment upon this evidence to the jury.

Neither did the court err to the prejudice of the defendant, in either giving or refusing instructions. The most of the instructions refused, if not all of them, were good-enough law, but the court substantially gave in other instructions all such parts and portions of them as were good law, and applicable to the case.

The judgment of the court below·will be affirmed.

All the Justices concurring.