2006 OK 47

**Phillip Roger LIERLY and Joe Bill Lierly, Appellees,**

v.

**TIDEWATER PETROLEUM CORPORATION, Appellant.**

No. 100,844.

Supreme Court of Oklahoma.

June 27, 2006.

As Corrected June 27, 2006.

CEEDINGS CONSISTENT WITH THIS OPINION.

Tom C. Lane, Sr., Sapulpa, OK, for appellees.

Sam T. Allen, IV, Sapulpa, OK, for appellant.

TAYLOR, J.

¶ 1 Appellant presents two questions of law for certiorari review: 1) Is an oil and gas lessee subject to liability for malicious prosecution for seeking an injunction against the surface owner who interferes with lessee's entry upon the land at a specific location? and 2) Is a defendant entitled to present closing argument on the amount of punitive damages in the second stage of a jury trial even though the plaintiff waives closing argument? We answer both questions in the affirmative. We hold the district court erred in refusing to allow defendant/appellant to make closing argument to the jury regarding the amount of punitive damages in the second stage of the jury trial. Accordingly, we reverse the district court's order denying defendant/appellant a new trial and that part of the district court's judgment awarding plaintiffs/appellees $11,000.00 for punitive damages. We remand this cause to the district court for a new second stage trial on the amount of punitive damages to be awarded plaintiffs/appellees.

## I. Facts and Proceedings Below

¶ 2 The evidence in the appellate record reveals the following pertinent facts. In May, 1994, Bobby G. Roberts (Roberts) purchased some thirteen oil leases and the surface rights to four tracts of land in Creek County from the L.B. Jackson Production Company under the terms of an Amended Plan for Reorganization confirmed in January, 1990, by the United States Bankruptcy Court for the Northern District of Oklahoma. The Emma Hengst tract and lease were included in the purchase. In June, 1994, Roberts assigned these surface rights and oil leases to his corporation, Tidewater Petroleum Corporation, appellant (Tidewater). Roberts is the principal owner, officer and manager of Tidewater.

¶ 3 This litigation involves the Emma Hengst tract and oil lease. The eighty-acre Emma Hengst tract is divided by Polecat Creek. The Emma Hengst lease has two producing oil wells. One well and tank battery are located on the west side of Polecat Creek and one well is on the east side. The L.B. Jackson Production Company owned the surface and operated the oil wells on the Emma Hengst tract for more than thirty years. The Jackson company accessed the oil wells through the gate and road on the neighboring Robbins' property on the east side of the Emma Hengst tract. While Tidewater owned the surface and operated the oil wells, it continued to access the Emma Hengst tract from the east side using the gate and road on the Robbins' property.

¶ 4 In April, 1997, Tidewater sold the surface rights to the Emma Hengst tract to Phillip Roger Lierly and Reesa Kay Lierly, husband and wife, and Joe Bill Lierly and Kerry Dawn Lierly, husband and wife, except a right-of-way on the west side of the tract. Tidewater continued to access the well on the east side of the Emma Hengst tract through the gate and road on the Robbins' property.

¶ 5 State Highway 117 borders the south edge of the Emma Hengst tract. Sometime earlier, the Oklahoma Highway Department constructed a driveway across the highway right of way and a gate for entry onto the Emma Hengst tract. However, the tract was not accessible from Highway 117 because the land dropped off some fifteen feet just inside the gate. Neither the Jackson company nor Tidewater improved the land for entry off Highway 117.

¶ 6 Shortly after purchasing the Emma Hengst tract, Phillip Roger Lierly and Joe Bill Lierly, appellees (Lierlys), started to improve the land for access off Highway 117. Tidewater asked the Lierlys' permission to access the wells off Highway 117. The Lierlys asked Tidewater to share in the cost of constructing the new road. Tidewater refused to pay any of the road construction costs.

¶ 7 In July, 1997, Tidewater filed suit in the district court alleging that entry off

Highway 117 is the only reasonable way to enter and exit the east side of the Emma Hengst tract and asking that the Lierlys be temporarily and permanently enjoined from interfering with Tidewater's access to the Emma Hengst lease off Highway 117.[1] Upon a bench trial, the district judge, the Honorable John Maley, found Tidewater had access to its wells through the Robbins' property and should not be at liberty to enter the Lierlys' property at will from the south entrance nor use the road built by the Lierlys. The district court denied Tidewater's request for a temporary injunction and barred it from using the roadway built by the Lierlys.[2] The district court also denied the Lierlys' motion for attorney fees.

¶ 8 In June, 1999, the Lierlys filed a petition in the district court alleging that Tidewater filed the suit for injunctive relief with malicious and total disregard of their rights. The Lierlys sought actual and punitive damages. Tidewater counterclaimed, alleging the Lierlys' claim was a sham and nothing more than a thinly veiled attempt to wire around the denial of Lierlys' motion for attorney fees in the suit for injunction. Tidewater sought damages for the expense of defending against this malicious prosecution claim and punitive damages. As affirmative defenses, Tidewater asserted that Lierlys' malicious prosecution claim is barred by the statute of limitations and by the doctrines of *res judicata*, issue preclusion and laches because the Lierlys did not appeal the trial court's denial of their motion for attorney fees in the suit for injunction.

¶ 9 This case was tried to a jury in September, 2003. Roberts testified that he has access to operate the Emma Hengst lease through the Robbins' property although Mr. Robbins did not want to execute an easement; the Lierlys would not allow Roberts to access the wells off Highway 117; the Lierlys asked him to pay half of the costs of a roadway needed for access off Highway 117; he did not attempt to negotiate with the Lierlys for access off Highway 117; he refused to pay any money toward the cost of the new roadway for access off Highway 117; he knows that Tidewater, as the oil and gas well operator, is responsible for constructing a lease road across the property to the wells; the Lierlys blocked the gate so he could not exit the property onto Highway 117; he has no malice toward the Lierlys; he filed the suit for injunctive relief to secure access to the wells from Highway 117; and the allegations in the injunction petition—that the Lierlys denied him access to the property to operate the wells and denied him ingress or egress by blocking the lease road block—were not truthful. The Lierlys gave testimony regarding the facts that gave rise to their malicious prosecution claim and their damages for loss of work, embarrassment and personal suffering.

¶ 10 At the conclusion of the first stage of the trial, the jury returned a unanimous verdict in favor of the Lierlys. The jury found: 1) the dollar amount of Lierlys' actual damages is the sum of $11,000.00; 2) the evidence that Tidewater acted in reckless disregard of the rights of others is clear and convincing; and 3) the evidence that Tidewater acted intentionally and with malice toward others is not clear and convincing.

¶ 11 The trial court opened the second stage of the trial by instructing the jury on the factors to be considered in fixing the amount of punitive damages, if any, to punish

---

1. Tidewater's petition for injunctive relief, filed July 18, 1997, in Creek County, No. CJ–97–488, alleged "There is only one reasonable point of ingress and egress to and from the subject property on the east side of Polecat Creek. The State of Oklahoma has installed a gate at this point and Defendants have refused to allow Plaintiff to place its lock on the gate so that Plaintiff may enter and exit the property. Defendants have informed Plaintiff that it will not be granted access to the subject property for the purpose of operating its lease unless Plaintiff agrees to pay one-half of the costs of a road which Defendants are building."

2. In the Journal Entry of Judgment, filed October 27, 1997, in CJ–97–488, the district court found "plaintiffs have access through Mr. Robbins property to their oil production and are not locked out." The court further found "plaintiff should not be at liberty to enter defendants' property at will from the south entrance, nor use the road built by defendants, entering from the south." The court enjoined plaintiff "from using the roadway built by defendants for ingress and egress to its oil properties."

Tidewater for acting with reckless disregard for the rights of the Lierlys. The trial court then asked for closing arguments. Lierlys' counsel waived closing argument. Tidewater's counsel asked to make a closing argument and Lierlys' counsel objected. The trial court denied the request and Tidewater objected. Whereupon the jury began to deliberate on the amount of punitive damages. Nine minutes later the jury notified the bailiff they had a verdict. With nine signatures, the jury fixed the punitive damages in the amount of $11,000.00.

¶ 12 On November 25, 2003, the district court entered judgment on the jury verdict in favor of the Lierlys. On December 1, 2003, Tidewater moved for a new trial on the bases that: 1) the court erred as a matter of law by overruling Tidewater's demurrer to the evidence and motion for directed verdict; 2) the court erred as a matter of law by instructing the jury on punitive damages; 3) the court abused its discretion in quashing the subpoena to District Judge John Maley and not allowing Tidewater to call Judge Maley as a witness; 4) the court abused its discretion in refusing to allow Tidewater's attorney to make closing argument in the second stage of the jury trial; and 5) the evidence is insufficient to support either the actual or punitive damages awarded by the jury. On May 25, 2004, the district court denied the new trial motion.

¶ 13 Tidewater timely appealed the judgment on the jury verdict and the denial of the motion for new trial. Tidewater's petition in error raised the same issues presented in its motion for new trial. The Court of Civil Appeals made a ruling on all issues raised by Tidewater. Resolving each issue against Tidewater, the Court of Civil Appeals affirmed the district court's order overruling the motion for new trial.[3]

¶ 14 Tidewater preserved two issues in its petition for writ of certiorari:[4] 1) whether an oil and gas lessee who seeks an injunction against the surface owner for interfering with the lessee's entry upon the land at a specific location may be liable for damages for malicious prosecution; and 2) whether a defendant is entitled to present closing argument concerning the amount of punitive damages in the second stage of a jury trial even though the plaintiff waived closing argument.

## II. Standard of Review

¶ 15 Tidewater appealed from the order denying a new trial and the judgment on the jury verdict. A trial court's denial of a new trial is reviewed for abuse of discretion. *Capshaw v. Gulf Insurance Co.*, 2005 OK 5, ¶ 6, 107 P.3d 595, 599. Because the trial court has broad discretion in ruling on a motion for new trial, the denial of a new trial will be reversed only upon clear error with respect to a pure and unmixed question of law. *Id.* at ¶ 7, 107 P.3d at 600. A judgment on a jury verdict is reviewed for competent evidence reasonably tending to support the verdict and for the absence of prejudicial error in the jury instructions and legal rulings. *Head v. McCracken*, 2004 OK 84, ¶ 2, 102 P.3d 670, 673–674. A reviewing court may not set aside a jury verdict or grant a new trial for misdirection of the jury or error in any matter of pleading or procedure unless the error has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right. 20 O.S.2001, § 3001.1.

---

3. The Court of Civil Appeals determined that: 1) the trial court correctly overruled Tidewater's demurrer to the evidence and motion for directed verdict because Tidewater did have access to the subject oil lease and lacked probable cause to seek an injunction against the Lierlys; 2) Tidewater waived the advise-of-counsel defense to the malicious prosecution claim in the trial court; 3) the trial court did not abuse its discretion in refusing to allow Tidewater to call Judge Maley, who presided over Tidewater's injunction suit, as a witness to give testimony regarding the injunction suit; 4) the trial court did not abuse its discretion in refusing Tidewater's request to

make closing argument to the jury regarding the amount of punitive damages in the second stage of the trial where plaintiffs (Lierlys) had waived closing argument; and 5) the jury's award of actual and punitive damages is supported by competent evidence.

4. We do not consider all the issues addressed by the Court of Civil Appeals. Issues addressed by the Court of Civil Appeals and not presented in the petition for certiorari review will not be considered by this Court. Okla.Sup.Ct.R. 1.180(b), 12 O.S.2001, ch. 15, app.

¶ 16 This case presents two questions of law for certiorari review. Questions of law are reviewed *de novo*. *De novo* review of a lower court's legal ruling is plenary, independent and nondeferential. *Christian v. Gray*, 2003 OK 10, ¶¶ 43–44, 65 P.3d 591, 608–609. In reviewing this case, we initially examine the trial court's legal rulings without deference to the trial court. If we find error in the trial court's rulings on a question of law, we must then determine that the legal error has resulted in a miscarriage of justice or a substantial violation of a statutory right before we may set aside the jury verdict and grant a new trial.

### III. Tidewater's Liability for Malicious Prosecution in Seeking Injunctive Relief

¶ 17 On certiorari, Tidewater contends that an oil and gas lessee who seeks an injunction against the surface owner for interfering with the lessee's entry upon the land at a specific location is not liable for damages for malicious prosecution. The essence of this contention is that the trial court erred in submitting the malicious prosecution case to the jury.

¶ 18 As authority for this contention, Tidewater relies on *Dulaney v. Okla. State Dept. Of Health*, 1993 OK 113, 868 P.2d 676, and *Reeves v. Agee*, 1989 OK 25, ¶ *12*, 769 P.2d 745. *Dulaney* recognized that a mineral interest owner has a right to enter land and to prospect for and take oil and gas and that this ownership right includes the right to ingress and egress. *Dulaney* at ¶ 8, 868 P.2d at 680. *Reeves* enumerated the five essential elements of malicious prosecution: 1) defendant's filing a former action, 2) its successful termination in favor of plaintiff, 3) defendant's want of probable cause for pressing the former action against plaintiff, 4) the presence of malice in defendant's conduct, and 5) damages. *Reeves* at ¶ 12, 769 P.2d at 752.

¶ 19 To support this contention, Tidewater argues that as the oil and gas lessee, it has the right to reasonable entry to access the oil wells; entry off Highway 117 is reasonable; therefore it had probable cause to believe the access it sought was reasonable; where there is probable cause there can be no malice; and without the element of malice there can be no malicious prosecution. This argument intertwines the legal concept of a lessee's right of access with that of probable cause and malice in a malicious prosecution claim. The argument is flawed in that an oil and gas lessee does not have a common-law right to enter a tract of land at each and every available point of entry, and the reasonableness of a point of entry onto a tract of land, alone, does not establish probable cause to seek injunctive relief.

¶ 20 Regarding the legal concept of a lessee's right of access, the common law has long recognized that an oil and gas lease carries with it the right to use the land as may be necessary to perform the obligations under the lease, *Anschutz v. Sanders*, 1987 OK 11, ¶ *5*, 734 P.2d 1290, 1291; and, that an oil and gas lessee may enter and occupy the surface of the land to the extent reasonably necessary for exploring and marketing oil and gas. *Davon Drilling Co. v. Ginder*, 1970 OK 51, ¶ 11, 467 P.2d 470, 472–473. The common-law right of access for drilling and production operations is limited not only to the extent it is **reasonably necessary** but also as provided in the Oklahoma Surface Damages Act, 52 O.S.2001, §§ 318.2—318.9. *Anschutz v. Sanders*, at ¶ 6, 734 P.2d at 1291. Under the surface damages statutory regime, the oil and gas lessee must engage in negotiations with the surface owner and seek an appraisal of surface damages, *id.*, and the surface owner is entitled to damages caused by the reasonable use of the surface by the oil and gas lessee. *Davis Oil Co. v. Cloud*, 1986 OK 73, ¶ 16, 766 P.2d 1347, 1351. Accordingly, a lessee does not have a common-law right to access an oil or gas well at any specific point of entry regardless of the desires of the surface owner.

¶ 21 Tidewater's belief that entry off Highway 117 was reasonable did not necessarily constitute probable cause for instituting a suit for injunctive relief. Probable cause for the institution of a legal proceeding is the honest belief on the part of the instigator that the claim is founded on facts sufficiently strong to warrant the average person

in believing the claim to be true. *Lewis v. Crystal Gas Co.*, 1975 OK 26, ¶ 14, 532 P.2d 431, 433. Probable cause for the institution of the earlier legal proceeding is a complete defense to a subsequent malicious prosecution claim. *Page v. Rose*, 1975 OK 176, ¶ 16, 546 P.2d 617, 620. In a malicious prosecution claim, the plaintiff has the burden to prove the lack of probable cause. *Id.*

¶ 22 The Lierlys proved lack of probable cause with Roberts' testimony. The injunction petition alleged that the Lierlys blocked Tidewater's access through the Robbins' property and prevented Tidewater from using a lease road to access the oil well, which Roberts testified were not truthful allegations. Roberts also testified that he had access to the Emma Hengst lease through the Robbins' property when he caused the injunction petition to be filed. In other words, Roberts knew he would not be injured if an injunction was not granted. *Sunray Oil Co. v. Cortez Oil Co.*, 1941 OK 77, 112 P.2d 792, *Syllabus by the Court*, No. 4 (concluding that a petitioner, to be entitled to injunctive relief, must demonstrate there is a reasonable probability that injury will result if the injunction is not granted).

¶ 23 Roberts' testimony shows the claim for injunctive relief was grounded in untruthful allegations and was not founded on facts strong enough to warrant the average person's belief in the claim. Roberts' testimony is sufficient to establish a lack of probable cause and give rise to an inference of malice. *Empire Gas & Fuel Co. v. Wainscott*, 1923 OK 334, ¶ 33, 216 P. 141, 145 (teaching that it is not necessary to prove malice by express testimony and that the finder of fact may draw an inference of malice from a showing of lack of probable cause).

¶ 24 Accordingly, we conclude that an oil and gas lessee who seeks an injunction against the surface owner for interfering with the lessee's entry upon the land at a specific location may be liable for damages for malicious prosecution. We find there was no prejudicial error in submitting the malicious prosecution case to the jury and there is competent evidence supporting the jury verdict on the merits of the malicious prosecution claim. We affirm the trial court's judgment on the jury verdict in the first stage of the jury trial.

## IV. Closing Arguments on the Amount of Punitive Damages

¶ 25 The remaining question presented for certiorari review is whether a defendant is entitled to present closing argument on the question of punitive damages in the second stage of a jury trial. Tidewater contends it was an abuse of discretion for the trial judge to deny its request to present closing argument to the jury on the fact question of the amount of punitive damages. We agree.

¶ 26 The right of a litigant to be heard in presenting evidence of witnesses and argument of counsel relating to any question of relevant fact to be submitted to the jury has been a part of Oklahoma law since statehood. *Godfrey v. Wright*, 1899 OK 19, ¶ 0, 56 P. 1051, *Syllabus by the Court*, No. 2. In deciding that the right to present oral argument on a disputed question of fact to the jury is an absolute right over which the trial court has no discretion, *Ely Walker Dry Goods Co. v. Blake*, 1916 OK 642, ¶ 3, 158 P. 381, quoted the 1883 case of *Douglass v. Hill*, 29 Kan. 527, 528–529, 29 Kan. 376, 377–378 (1887 edition):

> A party to a law suit has a right to be heard, not merely in the testimony of his witnesses, but also in the arguments of his counsel. It matters not how weak and inconclusive his testimony may be, if it is enough to present a disputed question of fact upon which he is entitled to a verdict of the jury, he has a right to present in the arguments of his counsel his view of the case. This is no matter of discretion on the part of the court, but an absolute right of the party. Courts doubtless may prevent their time from being unnecessarily occupied by prolix arguments, and so may limit the time which counsel shall occupy. And if the restriction is a reasonable one in view of the questions involved, and the testimony presented, there will be no error. *State v. Riddle*, 20 Kan. 711 [, 1878 WL 989]. But limiting the time of an argument and refusing to permit any argument

at all, are entirely different matters. The one is the exercise of a discretion, the other is a denial of a right.

 ¶ 27 The right to present argument is codified in our civil procedure statutes at 12 O.S.2001, § 577. Section 577 prescribes the order of a jury trial.[5] After the jury has been sworn, the order, in summary, includes statements of the case first by the party with the burden of proof and then the adverse party; presentation of the evidence first by the party with the burden of proof and then the adverse party; instructions to the jury; and arguments to the jury first by the party with the burden of proof and then the adverse party. The pertinent part of 12 O.S.2001, § 577 provides:

> When the jury has been sworn, the trial **shall proceed** in the following order, unless the court **for special reasons** otherwise directs:
>
> . . . .
>
> Seventh. After the instructions have been given to the jury **the cause may be argued.**
>
> (Emphasis added.)

 ¶ 28 Section 577 makes the prescribed order of trial mandatory on the trial judge.[6] The statute gives the parties the right to make closing arguments to the jury, but does not require them to do so. On its face, the statute places the discretion to make closing argument with the parties and not the trial judge.[7] Although it authorizes the trial judge to change the order in which a jury trial proceeds upon special reason, nothing in § 577 indicates that the trial judge may deny a party the time-honored right to present relevant evidence and argument of counsel relating to any question of fact to be determined by the jury.[8]

¶ 29 In this case, the parties made arguments to the jury at the close of the first stage of the trial. After the jury found that Tidewater caused actual damages to the Lierlys in the amount of $11,000.00 on their malicious prosecution claim and that the evidence that Tidewater acted with reckless disregard for the rights of others was clear and convincing, the trial judge proceeded to the second stage of the trial. The trial judge instructed the jury on the factors to be considered in determining an amount of punitive damages, but denied Tidewater's counsel's request to make closing argument on the amount of punitive damages.[9]

 ¶ 30 Punitive damages and the proceedings for imposition of punitive damages are statutory. 23 O.S.2001, § 9.1. Punitive damages may be imposed in actions for the breach of obligations not arising out of contract. Generally, punitive damages are considered to be an element of the recovery in the underlying tort action rested upon the

---

5. Oklahoma adopted Kansas' civil procedure code. *Littlefield v. Brown*, 1918 OK 233, ¶ 3, 172 P. 643, 644. The 1889 General Statutes of Kansas set out the order of trial in ¶ 4370 (ch.80, § 275). In language identical to the Kansas provision, the order of trial was prescribed in the 1893 Statutes of Oklahoma Territory, ¶ 4165 (ch.66, § 287), the 1908 General Statutes of Oklahoma, § 5123, and the 1909 Compiled Laws of Oklahoma, § 5794. Because Oklahoma's order of trial was taken from Kansas, this Court, in *Ely Walker Dry Goods Co. v. Blake, supra.*, followed the Kansas court's ruling in *Douglass v. Hill, supra.* That early statutory order of trial has been included in Oklahoma's civil procedure statutes since statehood, and it is now codified at 12 O.S.2001, § 577.

6. Unless contrary to clear legislative intent, the word "shall" in a statute signifies a mandatory command rather than a permissive directive. *Keating v. Edmondson*, 2001 OK 110, ¶ 13, 37 P.3d 882, 888.

7. Words in a statute will be given their plain meaning if possible. *Duncan v. Okla. Dept. of Corrections*, 2004 OK 58, ¶ 5, 95 P.3d 1076, 1079.

8. Oklahoma's common law protects the statutory right of oral argument. The common law remains in force in aid of the statutes. 12 O.S. 2001, § 2. The statutes and the common law are to be read together as one harmonious whole. *Brown v. Ford*, 1995 OK 101, ¶ 10, 905 P.2d 223, 228–229. The right to have counsel present closing argument on a disputed question of fact is a time-honored right recognized in the common law of American state courts. *See, Dobbins v. Oswalt*, 20 Ark. 619 (1859); *Douglass v. Hill*, 29 Kan. 527 (1883); and *Ely Walker Dry Goods Co. v. Blake*, 1916 OK 642, 158 P. 381.

9. The record shows the trial judge read to the jury the Oklahoma Uniform Jury Instruction No. 5.9—Exemplary or Punitive Damages—Second Stage.

proof of the underlying claim. *Rodebush v. Okla. Nursing Homes, Inc.,* 1993 OK 160, ¶ 21, 867 P.2d 1241, 1247. However, the punitive damages statute requires that the jury trial on the underlying claim and the jury trial on the amount of punitive damages must be separate proceedings. The provisions of 23 O.S.2001, § 9.1[10] applicable to the trial in this case read:

A. In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C and D of this section, give damages for the sake of example and by way of punishing defendant based upon the following factors: the seriousness of the hazard to the public arising from the defendant's misconduct; the profitability of the misconduct to the defendant; the duration of the misconduct and any concealment of it; the degree of the defendant's awareness of the hazard and of its excessiveness; the attitude and conduct of the defendant upon the discovery of the misconduct or hazard; in the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and the financial condition of the defendant.

B. Category I. Where **the jury finds by clear and convincing evidence that the defendant has been guilty of reckless disregard for the rights of others,** or an insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured, **the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages,** may award exemplary damages in an amount not to exceed the greater of:

1. One Hundred Thousand Dollars ($100,-000.00); or

2. The amount of the actual damages awarded.

(Emphasis added.)

¶ 31 The emphasized statutory language clearly provides that the jury trial will be separated into two stages. In the first stage, the jury is to determine fact questions relevant to defendant's liability on plaintiff's claim, actual damages, and evidence of the defendant's reckless disregard for the rights of others. In the second stage, the jury deals with the fact question of what amount of punitive damages, if any, is warranted by the evidence. *Sides v. Cordes,* 1999 OK 36, ¶ 11, 981 P.2d 301, 305.

¶ 32 Our uniform jury instructions consider these two separate stages to be two separate evidentiary trials before the jury. It is the second stage when the parties may present evidence to the jury relating to the amount of punitive damages;[11] which means it is not until the second stage that the parties have a meaningful opportunity to argue the fact question as to what amount of damages will punish the reckless and malicious behavior and deter such behavior in the future. Accordingly, a party's right to present argument of counsel on any question of fact to be determined by the jury must be afforded in the second stage of a jury trial on the amount of punitive damages under 23 O.S.2001, § 9.1(B) and 12 O.S.2001, § 577.

¶ 33 In this case, plaintiffs waived closing argument on the amount of punitive damages and then defendant asked to make closing argument. Plaintiffs objected and the trial judge ruled that the objection "must be sustained." In sustaining the objection, the trial court, effectively, allowed plaintiffs' counsel to decide the important issue of whether the defendant would be allowed to exercise its right to make closing argument to the jury. Defendant Tidewater preserved its exception to this ruling.

---

**10.** In 2002, the Legislature amended 23 O.S. 2001, § 9.1. It added a new sentence to subsection B, which reads: "Any award of punitive damages under this subsection awarded in any manner other than as required in this subsection shall be void and reversible error." 2002 Okla. Sess. Laws, ch. 462, § 1.

**11.** *See,* Okla. Uniform Jury Instruction No. 5.6—Exemplary or Punitive Damages—First Stage, Notes on Use, which provides: "All evidence relating to liability for punitive damages should admitted in the first stage, and evidence which relates solely to the amount of punitive damages should not be admitted until the second stage."

¶ 34 Upon our *de novo* review, it is clear that the trial court erred, as a matter of law, in denying Tidewater's request to present argument on the fact question of the amount of punitive damages. That legal error resulted in a substantial violation of Tidewater's statutory right to present argument on the fact question as to the amount of punitive damages. Without the benefit of closing argument, the jury deliberated for only nine minutes and returned a verdict in favor of plaintiffs of $11,000 in punitive damages, an amount equal to the actual damages. The judgment entered on the jury verdict on punitive damages must be set aside.

¶ 35 Although we have determined that the judgment on the jury verdict in the first stage of the proceeding below is free of error, there must be a new trial on the amount of punitive damages. Oklahoma allows a new trial to be granted solely on the issue of damages, *Shinn v. Francis,* 1965 OK 95, ¶ 31, 404 P.2d 1017, 1023, where it is clear the error in assessing damages did not affect the entire verdict. *Fields v. Volkswagen of America, Inc.,* 1976 OK 106, ¶ 11, 555 P.2d 48, 53. A new trial may be limited to the fact issues affected by the error where other fact issues are not interwoven and where it is clear that the error does not reach over and affect those issues in which there is no error and the judgment in other respects is free of error. *Hallford v. Schumacher,* 1958 OK 53, ¶ 20, 323 P.2d 989, 992–993. Here, the legal error occurred in the second stage of the proceeding and the only fact issue affected by the error is the amount of punitive damages. Accordingly, we reverse the district court's judgment entered on the jury verdict fixing punitive damages in the amount of $11,000.00 and remand this cause for a new second stage trial on the sole issue of the amount of punitive damages.

## V. Conclusion

¶ 36 We conclude that an oil and gas lessee who seeks an injunction against the surface owner for interfering with the lessee's entry upon the land at a specific location may be liable for damages for malicious prosecution. We also conclude that a party's right to present argument on any question of fact to be determined by the jury must be afforded to the defendant in the second stage of a jury trial on the amount of punitive damages under 23 O.S.2001, § 9.1(B) and 12 O.S.2001, § 577 even when the plaintiff waives argument.

OPINION OF THE COURT OF CIVIL APPEALS VACATED; ORDER OF THE DISTRICT COURT DENYING NEW TRIAL REVERSED; DISTRICT COURT JUDGMENT ON JURY VERDICT AFFIRMED IN PART AND REVERSED IN PART; CAUSE REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

WATT, C. J., WINCHESTER, V.C.J., and LAVENDER, HARGRAVE, OPALA, KAUGER and EDMONDSON, JJ., concur.

COLBERT, J., concurs in part and dissents in part.