2015 OK CIV APP 77

**Melese HEDRICK, Plaintiff/Appellant,**

v.

**Joan M. HARDT, M.D., and Rejuvena Skin and Wellness Center, a Professional Corporation, a/k/a Rejuvena Clinic, P.C., Defendants/Appellees.**

No. 111,273.

Court of Civil Appeals of Oklahoma, Division No. 3.

March 13, 2015.

Tom M. Cummings, Tom M. Cummings, Inc., Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Alison A. Cave, Alison A. Cave, P.L.L.C., Edmond, Oklahoma, and Hilton H. Walters, Rife, Walters, Stanley & Natarajan, Oklahoma City, Oklahoma, for Defendants/Appellees.

WM. C. HETHERINGTON, JR., Chief Judge.

¶1 In this medical negligence action, Appellant Melese Hedrick (Plaintiff) appeals the denial of her motion for new trial and the judgment based on a jury's verdict in favor of Appellees Joan M. Hardt, M.D., and Rejuvena Skin and Wellness Center, a Professional Corporation, a/k/a Rejuvena Clinic, P.C. (collectively, Defendants). The sole issue on appeal is whether the trial court correctly refused to instruct the jury on *res ipsa loquitur*. We find no error and affirm.

## FACTS

¶2 In 2001, Plaintiff received hair removal treatments on her face at another medical facility before deciding the treatments were ineffective and too costly for her budget. On February 14, 2005, she decided to try laser hair removal treatments at Rejuvena, which medical facility uses a CoolGlide laser.[1] Prior to Plaintiff's treatment that day with the first technician, she signed a "Laser Hair Removal Consent Form." The Consent Form explained, *as pertinent here*, the "most likely possible complications with the proposed procedure and subsequent healing period including, but not limited to, infection, scarring ... and/or blistering," and below the known risks, gave a list of "possible experi-

---

1. According to Plaintiff's expert, Dr. Paul Silverstein, the CoolGlide laser is designed to burn the hair follicle, not the skin. The handle of the CoolGlide has a refrigerated metal brass contact that runs just behind the laser beam, which is a ND–YAG (Neodynium-yttrium-aluminum-garnet or 1064 nm) laser. After the operator fires the laser to "zap" the hair follicle, he or she slides the handle to cool the surrounding skin to decrease the possibility of burning the skin, and then waits a second before refiring. According to Defendant's medical expert's testimony, Dr. Elder, the same laser's "cooling plate sits on the skin and chills the skin just prior to the laser pulse" which "protects the upper layer of the skin, and then the laser pulse goes through it."

ences/risks with Laser Surgery" about which Plaintiff was aware, including "DISCOMFORT, WOUND HEALING, PIGMENT CHANGES, SCARRING." (All caps in original.) Next to "SCARRING" risk, the Consent Form explained "[s]carring is a rare occurrence, but it is a possibility when the skin's surface is disrupted. To minimize the chances of scarring, it is IMPORTANT that you follow all post-treatment instructions carefully."

¶ 3 On March 30, 2005, Plaintiff reported she developed a vesicle ("small blister") after her first treatment and then received a second hair removal treatment from the first technician. Plaintiff did not report any issues to the same technician who also administered her third treatment on May 11, 2005.

¶ 4 On June 22, 2005, a second technician administered a fourth laser treatment, beginning with the right side of Plaintiff's face. Unlike the three prior treatments, Plaintiff testified the fourth was "burning a lot more" and she "had tears running down her face" until the first technician came into the room, inquired about her condition, and "mentioned turning the machine down." According to Plaintiff the two technicians had a brief discussion and apparently adjusted the settings on the CoolGlide laser,[2] because when the treatment was restarted, her pain level was less. After completing the treatment, Plaintiff testified she told the second technician her face "felt like it was on fire" so the technician gave her some creme to put on it. Plaintiff testified then she went straight home, and because her face was still burning, she put a cold wet "washrag" on her face.

Upon removing it, Plaintiff testified she noticed the "skin from all these areas had peeled off."[3]

¶ 5 The next day, Plaintiff called Rejuvena and advised the first technician she had "blisters which are oozing." After consultation with Dr. Hardt, the first technician advised Plaintiff to apply "Bacitracin" to the area, three times a day, and to return to Rejuvena if no improvement in one to two days.

¶ 6 Six weeks later, August 3, 2005, Plaintiff returned to Rejuvena for her next laser treatment. Dr. Hardt declined the treatment after examining Plaintiff's face, about which progress notes states, "Plaintiff had 8–10 millimeter pitted scars on the right side of her face from the last treatment," "still [with] mild excoriations" (scratches),[4] and "not using Bac[itracin]." Dr. Hardt offered six free Genesis laser treatments to help improve the appearance of Plaintiff's scars, which would need another two weeks to heal before the first treatment could be administered. Plaintiff returned to Rejuvena for only two of the six Genesis treatments.

¶ 7 In August 2006, Plaintiff's face was evaluated by a plastic surgeon, and the next year, she sued Defendants for medical negligence, alleging their employee had inflicted "serious facial burns and scars" with the CoolGlide laser during treatments for hair removal from her face. She sought damages for pain and suffering, medical expenses, and permanent disfigurement. Defendants denied liability, causation and damages and raised as defense, *inter alia*, voluntary assumption of the risk.[5]

2. Plaintiff, who was lying down on the treatment table with the CoolGlide at the end where her head was positioned, confirmed she could not actually hear the discussion between the two technicians.

3. Plaintiff does not explain precisely what "areas" she is referring to, but later during direct examination she clarifies the skin came off the blisters. According to Plaintiff's expert dermatologist, Dr. Davis, Plaintiff's "right cheek has a large deep scar near the corner of her mouth as well as smaller scars clustered on her chin and smaller scars on the back of her cheek."

4. During Dr. Hardt's direct examination, Plaintiff's counsel questioned Dr. Hardt about the different definitions of "excoriation" from general

al and medical dictionaries, however, she testified she always used "excoriations" to mean "scratches." Dr. Silverstein confirmed the latter definition, as did Dr. Davis, who testified "[e]xcoriations are linear, line-like scratches in the skin." Deposition, pp. 87–90.

5. Plaintiff did not designate for inclusion in the appellate record either her first amended petition filed October 1, 2009 or Defendants' answer to a later amended petition filed January 27, 2010, however the Pretrial Conference Order filed November 9, 2011 is attached as an exhibit to her motion to amend that order. According to the certified appearance docket included in the record, Plaintiff's motion was granted, but the final Pretrial Conference Order filed August 2, 2012

¶ 8 The matter was tried to a jury for three consecutive days in September 2012. During Plaintiff's case in chief, she, Dr. Hardt, and the first technician testified in person. Two medical expert witnesses, Dr. Paul Silverstein, the plastic surgeon [who had evaluated her in 2006], and Dr. Craig Davis, a dermatologist, respectively, testified by video deposition.. Several exhibits were pre-admitted, and others were admitted at the trial without objection. Following denial of Defendants' demurrer to the evidence, Defendants called one medical expert witness, Dr. Michael Elder, an anesthesiologist and director of the medical facility at which Plaintiff obtained hair removal treatments in 2001. The trial court overruled Defendants' directed verdict motion, and after objections to the proposed jury instructions, the court submitted the matter to the jury, who returned a verdict in favor of Defendants.

¶ 9 Plaintiff moved for new trial and filed an amended new trial motion the next day, both of which were filed prior to the filing of the judgment based on the verdict on October 23, 2012. By order filed November 9, 2012, the trial court denied Plaintiff's "First Amended" new trial motion. Plaintiff's appeal followed.[6]

## STANDARD OF REVIEW

¶ 10 In Plaintiff's first amended new trial motion, she challenged the trial court's refusal to instruct on *res ipsa loquitur*, claiming that decision alone prevented her from having a fair trial. She argued the court's stated authority for that decision is inapplicable to this case and the giving of Oklahoma Uniform Jury Instruction (OUJI) No. 14.14 is neither prohibited by direct evidence of Defendants' negligence nor by the fact that minor burns or blisters can occur with laser

hair removal treatments. Plaintiff's Brief in Chief, which has five separate propositions, re-urges her new trial arguments and challenges the denial of her first amended new trial motion.

¶ 11 We review a trial court's denial of an new trial motion for abuse of discretion. *Lierly v. Tidewater Petroleum Corp.*, 2006 OK 47, ¶ 15, 139 P.3d 897, 902. Because the trial court has broad discretion in ruling on a motion for new trial, the denial of a new trial will be reversed only upon clear error with respect to a pure and unmixed question of law. *Id.* A reviewing court may not set aside a jury verdict or grant a new trial for misdirection of the jury unless the error has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right. *Id.*, (citing 20 O.S.2001 § 3001.1.) The test upon review of an instruction improperly given or refused is whether there is a probability that the jurors were misled and thereby reached a different result than they would have reached but for the error. *Woodall v. Chandler Material Co.*, 1986 OK 4, ¶ 13, 716 P.2d 652, 654. Whether *res ipsa loquitur* is applicable in a specific case presents a question of law. *See Rogers v. Mercy Health Center, Inc.*, 2014 OK CIV APP 69, ¶ 23, 334 P.3d 426, 431 (citing *Harder v. F.C. Clinton, Inc.*, 1997 OK 137, ¶ 9, 948 P.2d 298).

## ANALYSIS

¶ 12 Under 76 O.S.2011 § 21, "negligence is presumed to have occurred when the plaintiff establishes an injury which was proximately caused by an instrumentality solely within the control of the defendant and would not have occurred absent negligence on the

was also not designated for inclusion in the record.

6. Plaintiff's Petition–in–Error indicates her appeal is simply brought from the court's November 9, 2012 order which denied her *amended* new trial motion. A copy of the underlying judgment memorializing the jury verdict is not attached to her Petition–in–Error, but the issues identified in the latter clearly address it and her Brief in Chief addresses the post-trial order and the judgment. Because Plaintiff filed her amended motion on October 10, 2012, two weeks prior

to the filing date of the verdict-based judgment on October 23, 2012, her amended new trial motion will be deemed filed immediately after the filing of the verdict-based judgment and therefore "timely," *i.e.*, within the ten day window for filing a motion for new trial allowed by 12 O.S.2011 § 651(A). Consequently, review of whether the court abused its discretion by denying Plaintiff's amended new trial motion requires examination of the court's refusal to give the jury an instruction for *res ipsa loquitur.*

part of the defendant." *Smith v. Hines*, 2011 OK 51, ¶ 21, 261 P.3d 1129, 1136. Section 21 creates a presumption of negligence in medical negligence cases which is explained by OUJI No. 14.14, as follows:

In addition to the rules which have been stated with respect to negligence, there are situations in which negligence may be presumed.

[Plaintiff] contends that this case involves such a situation and consequently has the burden of proving *by the weight of the evidence* all of the following:

1. [Plaintiff] suffered an injury;

2. The injury was directly caused by a [device/procedure] that was solely within the control of [Defendant]; and

3. The injury is one that does not ordinarily occur under the circumstances in the absence of negligence on the part of [Defendant].

This presumption places the burden of proof on [Defendant] to prove by the weight of the evidence that [he/she] was not negligent.

¶ 13 Plaintiff asserts OUJI 14.14 should have been given to the jury in this case because her evidence establishes all three foundation facts. She also asserts her expert medical witnesses, Dr. Silverstein and Dr. Davis, each testified "her injury is not one that ordinarily occurs under the circumstances in the absence of negligence on the part of the operator of the machine." She contends the presence of the latter evidence distinguishes this case from *Sisson v. Elkins*, 1990 OK 123, 801 P.2d 722, and makes it inapplicable here.

¶ 14 This Court has never considered the application of § 21 to a medical negligence case involving laser hair removal. *Sisson*, however, like this case, involved the trial court's refusal to give a requested *res ipsa loquitur* instruction and the jury returned a verdict in favor of the defendant physician. The issue on appeal the Court identified was "whether the three foundational facts have been established *by the plaintiff's evidence*

so as to allow [§ 21] to be applicable." (Emphasis added.) *Id.*, ¶ 7. The *Sisson* Court found clear record evidence of the first two foundation facts, *i.e.*, the plaintiff's expert had testified she sustained injury and the instrumentality that caused the injury was in the surgeon's exclusive control.

¶ 15 Identifying as a "problem" whether there was any evidence for the third foundation fact, the *Sisson* Court noted plaintiff's medical expert had "admitted every surgeon who performs the subject procedure ran a risk of cutting the conduit" (an artificial heart graft). The expert also testified "major bleeds can and do occur without negligence", his recommended surgical method would have prevented cutting the plaintiff's conduit, and in his opinion the plaintiff's surgeon was negligent. The Court rejected the plaintiff's argument the third foundation fact *could be inferred* from such expert testimony, quoting its earlier holding in *St. John's Hospital & School of Nursing v. Chapman*, 1967 OK 126, ¶ 23, 434 P.2d 160, 168, "[a]n inference [of negligence under the doctrine of *res ipsa loquitor*[7]] arises only from an *established* foundation fact. The inference cannot supply the foundation fact from which it arises." (Emphasis added.) *Sisson*, 1990 OK 123, ¶ 9, 801 P.2d 722. Finding the plaintiff's expert in *Sisson* did not testify "an injury, such as [the plaintiff's], does not ordinarily occur under these circumstances absent negligence on the part of the surgeon," the Court held "because *evidence* of such third [foundation] fact is necessary for the statutory *presumption* of negligence to apply, the trial court was correct in refusing to give the *res ipsa loquitur* instruction." (Emphasis added.) *Sisson*, ¶ 10.

¶ 16 As we interpret *Sisson*, the trial court's concerns at the jury instruction conference during the trial in this case with Plaintiff's medical evidence, *i.e.*, blisters and burns are a known risk of hair removal with the CoolGlide laser and said blisters and burns may occur without negligence, was not the critical issue when considering if her evidence established the third foundation

---

7. A few early Oklahoma cases refer to the same doctrine as *"res ipsa loquitor,"* however, the Restatement Second, Torts, § 328D and the majority of Oklahoma cases use the more common spelling of *"loquitur."*

fact. Essentially the same basic testimony in *Sisson* together with the expert's stated opinion of the surgeon's negligence still failed to constitute *evidence* of that same fact. The critical issue before the trial court in this case was whether Plaintiff's medical expert testified that an "injury" like Plaintiff's does not ordinarily occur during hair removal with a CoolGlide laser absent negligence on the part of the Defendants. In *Sisson,* no such testimony existed in the record. The same cannot be said in this case considering Dr. Davis' testimony:

> Q: Can damages that [Plaintiff] had occur in the absence of negligence?
>
> A: No.
>
> Q: So in your opinion the only way that you can be damaged the way [Plaintiff] was damaged is when someone negligently applies that laser?
>
> A: Correct.

¶ 17 However, even though we find *Sisson* distinguishable from this case on the evidence establishing the third foundation fact, the trial court's refusal to give OUJI 14.14 in this case is nevertheless correct. Unlike in *Sisson,* in which the plaintiff's record evidence established the first two foundation facts, Plaintiff's evidence here does not.

¶ 18 Pertaining to § 21's first foundation fact, Plaintiff contends in her Brief in Chief that Defendants "stipulated, prior to trial, that the CoolGlide laser hair treatment caused [her] *blisters and burns* on her fourth treatment *and that those burns resulted in scars.*" Although the terms "blisters" and "burns" are used interchangeably by the parties and the trial judge, it is important here to clarify Plaintiff's expert medical testimony established her "blisters" were "superficial second-degree burns," and that the general term, "burns," can also include or refer to one that is "first-degree," *e.g.,* a sunburn, or a deeper "second-degree." [8] Plaintiff appar-

ently claims the CoolGlide initially caused the latter type of burns which resulted in her permanent scars.[9]

¶ 19 However, there is no record proof of a written or oral stipulation, as alleged above, and Plaintiff's only citation to the record for said statement reveals the trial court's pretrial ruling that Defendants' "stipulation didn't say anything about *scars.*" Regardless, we treat Defendants' admission in their Answer Brief "there is no dispute [Plaintiff] had *burns/blisters* from her first and fourth laser hair removal treatment," as supplementing the appellate record and supporting the alleged stipulation as it relates to the blisters.

¶ 20 Pertaining to evidentiary support for § 21's second foundation fact, Plaintiff argues her "second degree burns and resulting scars" were caused by the CoolGlide laser which was operated solely by Defendants' employee, Ms. Johnson, who testified the technician or aesthetician who operates the CoolGlide laser is in control of that machine during the hair removal treatment and that Plaintiff was a passive recipient of that treatment. Concerning the second foundation fact, the Supreme Court has explained "[e]xclusive control . . . does no more than eliminate, within reason, *all explanations for the injurious event* other than the defendant's negligence,-*i.e.,* it shows that defendant's negligence *probably caused* the accident." (Emphasis added.) *Harder v. F.C. Clinton, Inc.,* 1997 OK 137, ¶ 18, 948 P.2d 298, 306; *see also Avard v. Leming,* 1994 OK 121, ¶ 6, 889 P.2d 262, 264.

¶ 21 Our research yields no Oklahoma medical negligence cases addressing application of § 21's statutory presumption under circumstances where a plaintiff's actions and/or inactions have been alleged to be either a contributing or direct cause of the

---

8. Dr. Silverstein also testified that second-degree burns are considered "partial thickness burns" whereas third-degree burns are called "full-thickness burns."

9. During the jury instruction conference, the court voiced concern with the third "prong" or foundation fact, stating there was "lots of testimony that burns or blisters occurs with this technique" and "everybody agrees that many pa-

tients get burns." The court questioned Plaintiff's counsel as to his position on whether the "actual injury" addressed by the third prong was "the burn" or the "severity/degree of the burn." Plaintiff's counsel identified the latter "as what the expert witnesses have said," explaining each testified "using this CoolGlide Laser, you never get a burn of this degree unless it's negligent."

injury. According to Restatement (Second) of Torts § 328D(I)

> the inference of negligence does not point to the defendant *until the plaintiff's own conduct is eliminated as a responsible cause.* Where the evidence fails to show a greater probability that the event was due to the defendant's negligence than that it was caused by the plaintiff's own conduct, the inference of the defendant's responsibility can not be drawn.

¶ 22 In this case, Plaintiff's own expert witnesses testified about two other possible explanations for the scars on Plaintiff's face—neither of which would have been within Defendants' exclusive control. The first was scratching or picking the blisters, about which Dr. Davis agreed a patient could make a blister worse or change the shape of the injury. Dr. Silverstein confirmed the latter, *i.e.*, "if [Plaintiff] were a picker ... she could convert the superficial second degree burn to a deep second degree, which would cause a bigger scar" and "if you don't care for [a superficial second degree burn] properly, it becomes a deeper burn." Evidence of Plaintiff's scratching her burns was admitted during her direct testimony about her medical records from Rejuvena, specifically Dr. Hardt's progress note dated August 3, 2005 which stated, as relevant here, "still [with] mild excoriations" and "not using Bac[itracin]." Plaintiff's direct-examination of Defendant Dr. Hardt, although attempting to discern a different meaning for "excoriation," confirmed her use of "excoriations" meant "scratching."

¶ 23 Failure to properly treat the injury and/or follow medical instructions was the other possible explanation for Plaintiff's injury. On this point, Dr. Silverstein testified "blisters," like Plaintiff reported, should have healed within 14 days if Bacitracin had been used properly. Plaintiff denied scratching, picking at her blisters, and testified she used the Bacitracin until "they scabbed over." However, the jury heard undisputed testimony from all three medical experts that Bacitracin is used to prevent scabbing, Dr. Davis' notes his evaluation of Plaintiff indicated she told him she had only used Bacitracin "several days," whereas she testified it was "possibly a week." She also testified she didn't return to Rejuvena as instructed because "[she] knew there was nothing [Defendants] could do at the time to fix it" and "once you're burned, you're burned." However, according to Dr. Davis' video deposition, he believed in his professional opinion Plaintiff would have gotten at least a 50% better result had she gone back to Rejuvena in a day or so after reporting the blisters. Based on Plaintiff's evidence alone, she failed to establish Defendants' negligence probably caused her injury. We find no error with the trial court's decision to not instruct the jury on *res ipsa loquitur.*

## CONCLUSION

¶ 24 The judgment entered on the jury verdict in favor of Defendants is **AF-FIRMED.**

MITCHELL, P.J., and JOPLIN, J., concur.